GERARD RENO LEVESQUE ET AL. *v.* D & M BUILDERS, INC.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued November 18, 1975—decision released February 3, 1976

*Walter A. Twachtman, Jr.,* for the appellant (defendant).

*Philip P. Apter,* with whom, on the brief, was *Marvin Apter,* for the appellees (plaintiffs).

BARBER, J. The plaintiffs, owners of a house and lot which they had purchased from the defendant, instituted this action to recover damages for breach of contract, breach of warranty, and negligence, claiming that the house which they had purchased had been built too close to the edge of the lot.[1]

The facts of the case are not in dispute. On April 29, 1968, the plaintiffs entered into an agreement

---

[1] In their original complaint, the plaintiffs also included a firm of civil engineers and land surveyors as defendants, but later withdrew their action against them. The firm was subsequently impleaded as a third party defendant by D & M Builders, Inc., but following the conclusion of the trial, the third party action was withdrawn, leaving D & M Builders, Inc., as the only defendant.

with the defendant for the construction and purchase of a house on a lot being developed by the defendant in Southington. A certificate of occupancy was issued by the building inspector on July 23, 1968, and the following day a warranty deed to the property was delivered to the plaintiffs, who paid $22,600 for the house and lot. The deed recited that the lot was subject to "any and all building lines and zoning restrictions as imposed by governmental authority," and to a "forty (40) feet building line as shown on the map referred to." The original plot plan showed the house as being located, at its nearest point, forty-seven feet from the street line.

In May, 1969, the plaintiffs inquired of the building inspector with regard to adding a breezeway and garage. It was then discovered that, at its closest point, the house was only twenty-five feet from the street line, rather than the forty feet required by the Southington zoning regulations. The house is out of line with adjacent homes and the view from the back door is of the front door of the house on the adjoining lot. At the time the house was constructed and occupied by the plaintiffs, it was in violation of the Southington zoning regulations and subject to § 8-12 of the General Statutes which reads, in part: "If any building or structure has been erected . . . in violation of any . . . [zoning] regulation . . . , any official having jurisdiction . . . may institute an action or proceeding . . . to restrain, correct or abate such violation . . . ." The house now comes under the protection of § 8-13a of the General Statutes which provides that "[w]hen a building is so situated on a lot that it violates a zoning regulation of a municipality which prescribes the location of such a build-

ing in relation to the boundaries of the lot, and when such building has been so situated for three years without the institution of an action to enforce such regulation, such building location shall be deemed a nonconforming use."

The defendant does not contest the trial court's conclusion that the house was misplaced on the lot in violation of the Southington zoning regulations and in breach of the sales contract with and warranty deed to the plaintiffs. The only issue on appeal concerns the proper measure to be used in assessing the damages to be awarded to the plaintiffs.

The court ruled that the proper measure of damages is the cost of relocating the house, even though that cost might appear disproportionately high, and that the damages should be measured as of the date of the breach. The court found that the cost of moving the house to a proper location would be $3800, and the costs of building a new foundation, regrading, connecting utilities and related expenses would amount to $6000. The court also found that living expenses for the plaintiffs during the period when the relocation of the house is taking place would be $1000.[2] The amount of damages was therefore set at $10,800.

As a general rule, in awarding damages upon a breach of contract, the prevailing party is entitled to compensation which will place him in the same

[2] The defendant has not directly attacked the propriety of including as an element of special or consequential damages the probable living expenses of the plaintiffs for the period when the relocation of the house, as projected by the court, is taking place. For the general rule on foreseeable special or consequential damages in contract cases, see Restatement, 1 Contracts § 346 (1) (b); 11 Williston, Contracts (3d Ed. Jaeger) §§ 1363, 1344, 1344A.

position he would have been in had the contract been properly performed. *Bertozzi* v. *McCarthy,* 164 Conn. 463, 468, 323 A.2d 553; *Sabo* v. *Strolis,* 148 Conn. 504, 506, 172 A.2d 609. Such damages are measured as of the date of the breach. *Bachman* v. *Fortuna,* 145 Conn. 191, 194, 141 A.2d 477; *Lee* v. *Harris,* 85 Conn. 212, 214, 82 A. 186; 22 Am. Jur. 2d, Damages, § 52. For a breach of a construction contract involving defective or unfinished construction, damages are measured by computing either "(i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or (ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste." Restatement, 1 Contracts § 346 (1) (a), p. 573; see annot., 76 A.L.R.2d 805, 812 § 4. As we stated in *M. J. Daly & Sons, Inc.* v. *New Haven Hotel Co.,* 91 Conn. 280, 288, 99 A. 853: "A different method [of assessing damages] . . . is required to accomplish the ends of justice where the shortcomings are such as may be remedied and completion according to the contract had without substantial interference with the structure of the building, than where the remedy and completion involves substantial structural changes. . . . In the latter case, the amount of . . . [damages] might be measured by the diminished value of the building to the owner by reason of the defects." This rule has its origin in considerations of equity and justice; id., 287; and is justified on the ground that although damages so measured may not be sufficient to place the injured party in the same physical posi-

tion as would complete performance of the contract, his pecuniary position will be substantially as good. 5 Corbin, Contracts § 1090; compare *Scribner* v. *O'Brien, Inc.,* 169 Conn. 389, 363 A.2d 160, where the issue of economic waste was not in issue. This does not mean that there are not some cases where the difference in value may be the same as the cost of moving the structure. See *Richard* v. *A. Waldman & Sons, Inc.,* 155 Conn. 343, 348–49, 232 A.2d 307. Moreover, the cost of remedying the defect is admissible in proving the difference in value between the house as built and as specified in the agreement. Id., 348. Where an application of the two rules would result, however, in extremely different amounts, it is usually the smaller of the two amounts that will be awarded. 5 Corbin, op. cit.; see also *Falco* v. *James Peter Associates, Inc.,* 165 Conn. 442, 446, 335 A.2d 301; *Taylor* v. *Conti,* 149 Conn. 174, 180, 177 A.2d 670 (both cases involving injury to real property).

The trial court, in holding that the proper measure of damages is the cost of relocating the house, distinguished between commercial buildings and dwellings. Citing 13 Am. Jur. 2d, Building and Construction Contracts, § 79, the court, in its memorandum of decision, noted that "unlike a commercial building, a dwelling has an esthetic value." Although some jurisdictions have adopted such a rule; see *Fox* v. *Webb,* 268 Ala. 111, 105 So. 2d 75; this court has never done so and is not inclined to do so now. The trial court erred in its method of assessing the amount of damages, and a new trial, restricted to the issue of damages, must be held.

On appeal, the defendant has pursued its claim, made at trial, that the plaintiffs suffered no

economic loss since the property is now worth more than what the plaintiffs paid for it.[3] In making this argument, the defendant has also misconstrued the applicable rule of damages. As we have stated, the damages must be measured as of the date of the breach. As of that date the building was in violation of the zoning regulations and had not ripened into a statutory nonconforming use. That condition is a matter which must be taken into consideration in determining the value of the defendant's performance. See *Talarico* v. *Conkling,* 168 Conn. 194, 362 A.2d 862. The fact that the value of the property may have increased in the interim between the breach and the time of trial is of no relevance. It may well be that, as of the date of the breach, the difference in value between the dwelling contracted for, and as built, equaled or even exceeded the cost of relocating the structure. This can only be determined after a hearing in damages and the presentation of expert testimony.

---

[3] In asserting its claim, the defendant seeks to correct the finding by adding thereto several paragraphs of its draft finding pertaining to the value of the property on the ground that they are admitted or undisputed. "To secure an addition to the finding the . . . [defendant] must point to some part of the appendix, the pleading or an exhibit properly before us which discloses that the . . . [plaintiffs] admitted the truth of the fact or that its validity was conceded to be undisputed." *Hartford Kosher Caterers, Inc.* v. *Gazda,* 165 Conn. 478, 480 n.1, 338 A.2d 497. "That a witness testified to a fact without direct contradiction is not of itself sufficient; the trial court must be the judge of the credit to be given a witness." Practice Book § 628 (a). The facts which the defendant seeks to add to the finding are neither admitted nor undisputed. The plaintiffs' real estate witness testified that the property was "worth only what someone is willing to pay for it with the violation existing." The witness, however, could not place a monetary value on the house and lot with the violation. The court obviously did not believe that the market value of the house and lot was not influenced by the existence of the nonconforming use, as claimed by the defendant.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiffs to recover such damages against the defendant, D & M Builders, Inc., as they may prove on a new trial limited to the issue of damages.

In this opinion the other judges concurred.