MARRON AND SIPE BUILDING AND CONTRACTING CORPORATION ET AL. *v.* HOLLY FLOR ET AL.

NEW MILFORD CAR WASH, INC. *v.* SHERMAN EAST, INC.
(7283)

NORCOTT, FOTI and LAVERY, Js.

Argued February 27—decision released August 21, 1990

*Charles F. Brower,* for the appellants-appellees (defendants in the first case, plaintiff in the second case).

*Vincent P. McCarthy,* for the appellees-appellants (named plaintiff et al. in the first case).

*Gregory J. Pepe,* for the appellee (plaintiff in the first case Land Engineering Associates, Inc.).

LAVERY, J. This is an appeal from judgments in two building contract cases that were consolidated by the court and tried to a jury. Case No. 43905 is a suit for money damages for nonpayment of the balances due for services and materials furnished in the construction of a car wash on Route 7 in New Milford. In that action, the owner filed counterclaims alleging negligence. Case No. 45565 is a suit by the owner against the car wash equipment supplier and installer for negligence. We affirm the trial court's judgments.

Although the cases were consolidated in the trial court, they have separate case files, and we discuss them separately because they are complicated. In Case 43905 the plaintiffs are James Marron, Leroy Sipe, the Marron and Sipe Building and Contracting Corporation (M and S Corp.) and Land Engineering Associates, Inc. (Land Engineering). The defendants are the New Milford Car Wash, Inc. (car wash) and Holly Flor. In case No. 45565 the plaintiff is New Milford Car Wash, Inc. (car wash), and the defendant is Sherman East, Inc. (Sherman East).

All of the parties were involved in the construction of the car wash in 1985. Flor hired M and S Corp., Land Engineering and Sherman East. M and S Corp. was hired to act as general contractor. Land Engineering supplied engineering designs for the septic system. Sherman East supplied car wash equipment, installed it and supplied the design for a trench that was to be constructed through the middle of the car wash. Construction began in June, 1985, and was completed on

November 8, 1985, when the car wash opened for business. Certain problems that arose after construction were remedied by M and S Corp.[1]

The operation of the car wash is relevant to the various claims made in this appeal. Cars enter the south end of the car wash and exit the north end. There is a front wheel pull conveyor system which transports the cars through the car wash. Beneath the conveyor track is a trench for catching water. A dam in the middle of the trench divides it in two. The southern half of the trench is for catching wash water, which contains various cleaning chemicals. The northern half catches rinse water which contains car wax, but no cleaning chemicals. The northern part is approximately two and one-half feet wide and forty feet long.

The purpose of the dam is to keep the two types of water separate. Wash water is recycled whereas rinse water is discharged into the septic system. State environmental regulations restrict the discharge of cleaning chemicals into the septic system.

Jay Keillor, the president of Land Engineering, designed the septic system for the disposal of rinse water. A twenty foot section of six inch pipe leads from the west side of the northern half of the trench to the outside wall of the car wash. A second pipe leads from the outside wall to the first septic tank. There are two 5000 gallon septic tanks in the disposal system. There are baffles in the septic tanks opposite from where the water enters the tanks, which trap floatable material. The tanks must be pumped clean regularly.

[1] A water main broke on two occasions, and was mended both times. A cloth rag lodged in a drain pipe, causing water to back up, and M and S Corp. dislodged it. Also, Land Engineering had connected drain pipes from the car wash to a drainage trench on the property of an adjoining landowner, Joseph Tobin. Those pipes were subsequently removed, and another trench was constructed in a new location.

A pipe leads from the second septic tank to a precast gallery. A precast gallery is a large tank similar to a septic tank except its purpose is to disperse filtered water into the ground rather than to trap sediment. The precast gallery at the car wash has holes in its bottom and sits on top of a leaching field consisting of four trenches that are full of rock and concrete. Water from the car wash is returned to the groundwater through the leaching field.

The elevation of the leaching field and the tanks dictates the elevation of the car wash. The pipes leading from the car wash must have a particular minimum pitch in order for water to flow out to the septic system. An imaginary line at the inside bottom of a pipe, where the water flows, is known as the invert of the pipe. The minimum pitch of the invert of the twenty foot pipe inside the car wash is one-eighth inch rise per foot. The pipe was installed so that the invert had a pitch of three-sixteenths inch rise per foot.

The invert enters the car wash six inches from the bottom of the rinse water trench. The top of the dam is two to three inches higher than the invert at the opening of the pipe. If 15,000 gallons of water went into the septic system per eight hour day, the water level in the northern end of the trench would rise one and one-half inch higher than the invert of the pipe. Thus, it appears that there was a great deal of extra capacity built into the drainage system because, as Keillor estimated, the car wash would discharge 5000 gallons of rinse water per twenty-four hour day under ordinary usage.

William Quinlan, the president of Sherman East, supplied and installed the car wash equipment, such as the conveyor track, brushes, etc. Quinlan welded the conveyor track to the floor. He set the passenger side of the track zero to one inch higher than that of the

driver's side, as specified by the equipment manufacturer. Metal plates were installed over the car wash trench. M and S Corp. began to drill and pin those plates to set them in place, but left the project to begin a new construction project. On March 7, 1987, Flor hired Thomas Laramy to inspect and service the car wash equipment. He testified that he found that some of the metal plates were not pinned, that some of the welds on the conveyor track had broken and that the passenger side of the conveyor track was not installed at the appropriate height. He stated that he charged Flor $4554.89 to repair these conditions, but the trial court did not allow Laramy's bills into evidence.

## CASE NUMBER 43905

Case number 43905 commenced on May 21, 1986, when M and S Corp. filed a complaint against Flor and the car wash.[2] The complaint had four counts. In the first and second counts, M and S Corp. alleged that it had fully performed under its construction contract with the defendants and was contractually entitled to payment from them of $41,693.33. In the third count, M and S Corp. alleged that the defendants failed to give M and S Corp. a mortgage on property located at 107 Danbury Road as required under paragraph thirteen of the construction contract. The fourth count contained a claim for payment for electrical contracting services. The trial court ordered that this count be severed from the case. After it was severed, the count was then consolidated with case number 290323. See *A.J. Masi Co.* v. *Marron & Sipe Building & Contracting Corporation*, 21 Conn. App. 565, 567, 574 A.2d 1323 (1990).

---

[2] Flor and the car wash have acted jointly in this case in filing a complaint, two counterclaims, various motions and an appeal. Hereafter, rather than continuously referring to Flor and the car wash, we shall simply refer to Flor alone.

On February 11, 1987, Land Engineering, which had been made a plaintiff in the action on January 26, 1987, also filed a complaint against Flor, alleging that Flor had refused to pay a $8269.17 debt on the ground that she thought M and S Corp. owed the amount to Land Engineering.

Flor filed two counterclaims. The first was filed on August 13, 1987, and named Leroy Sipe and James Marron individually, and also named M and S Corp. This counterclaim had two counts. In the first count, it charged that the plaintiffs negligently constructed the car wash. The second count alleged that the plaintiffs negligently underestimated the cost of construction by $217,000.

The second counterclaim, filed on May 13, 1987, named Land Engineering and alleged that Land Engineering negligently designed the drainage system of the car wash. M and S Corp. also filed a cross complaint against Land Engineering alleging negligence. Thereafter, Land Engineering filed a cross complaint on January 7, 1988, seeking indemnification from M and S Corp. in the event that the court ruled in favor of Flor on Flor's counterclaim against Land Engineering.

All of the parties made oral motions for directed verdict. The trial court then directed verdicts as follows: (1) in favor of James Marron and Leroy Sipe on the first count of Flor's counterclaim against them, which count alleged that M and S Corp. acted negligently and breached its contract with Flor and the car wash; (2) in favor of M and S Corp. on Land Engineering's January 7, 1988 cross complaint against M and S Corp. seeking indemnity; and (3) in favor of Land Engineering on the counterclaim of Flor against Land Engineering alleging negligence.

The trial court submitted the remainder of the charges to the jury on separate verdict forms, and

instructed the jury that its foreperson was to sign each form after the jurors had come to an agreement on each count.[3]

After the verdicts were returned, Flor submitted motions to set them aside. The trial court denied all of these motions except her motion to set aside the jury's verdict on the third count of the complaint of M and S Corp.,[4] which awarded M and S Corp. $9229.75 for damages arising out of Flor's refusal to give M and S Corp. a mortgage.

---

[3] The completed separate verdict forms read as follows: "(1) On the First Count of the complaint of Plaintiffs Marron, Sipe and Marron and Sipe Building & Contracting Corp. claiming breach of contract the Jury finds the issues for the Defendants Holly Flor and The New Milford Carwash, Inc. (2) On the Second Count of the complaint of Plaintiffs Marron, Sipe and Marron and Sipe Building & Contracting Corp. claiming reasonable value of services rendered, the Jury finds the issues for the Plaintiffs Marron, Sipe and Marron and Sipe Building & Contracting Corp. and against the Defendants $39,209.25 damages. (3) On the Third Count of the complaint of Plaintiffs Marron, Sipe and Marron and Sipe Building & Contracting Corp. claiming damages for refusal to give a mortgage, the Jury finds the issues for the Plaintiffs Marron, Sipe and Marron and Sipe Building & Contracting Corp. and against the Defendants $9,229.75 damages. (4) On the First Count of the [counterclaim] of Defendants Holly Flor and The New Milford Car Wash, Inc. against Marron and Sipe Building & Contracting Corp. claiming breach of contract, the Jury finds the issues for the Defendants Holly Flor and The New Milford Carwash, Inc. and against Marron and Sipe Building and Contracting Corp. $1.00 damages. (5) On the Second Count of the [counterclaim] of defendants Holly Flor and The New Milford Car Wash, Inc. against Marron, Sipe and Marron and Sipe Building & Contracting Corp. claiming negligent misrepresentation, Jury finds the issues for the Defendants Holly Flor and The New Milford Carwash, Inc. against Marron and Sipe Building & Contracting Corp. $1.00 damages. (6) On the complaint of Plaintiff Land Engineering Associates Inc. against Holly Flor and The New Milford Car Wash, Inc. claiming the value of services rendered, the Jury finds the issues for the Plaintiff Land Engineering Associates, Inc. against the Defendants $8,269.17 damages. (7) On the cross complaint of Plaintiffs Marron, Sipe and Marron and Sipe Building & Contracting Corp. against Plaintiff Land Engineering Associates, Inc. claiming negligence, the Jury finds the issues for the Plaintiff Land Engineering Associates, Inc."

[4] See verdict number 3 in footnote 3, supra.

After the trial court rendered judgment in both cases in July, 1988, Flor and the car wash filed a joint appeal and M and S Corp. filed a cross appeal. Flor and the car wash appealed the judgment rendered on July 26, 1988, in case number 45565 as the plaintiff in the case, and they appealed the judgment rendered on July 28, 1988, in case number 43905 as the defendants in that case. M and S Corp. cross appealed as the plaintiff in case number 43905.

Flor claims in case 43905 that the trial court (1) should not have directed verdicts in favor of Land Engineering and M and S Corp. on those counts that alleged that these contractors acted negligently, (2) should not have disallowed testimony by certain witnesses regarding the operation of the trench drainage system, and (3) should not have admitted appraisals of the car wash into evidence during the cross-examination of Flor. M and S Corp. claims that the trial court should not have overturned the jury's verdict in its favor on the third count of its complaint in case number 43905, which alleged that Flor had breached her contractual obligation to give M and S Corp. a mortgage on certain of her property.[5]

## I

The first claim raised by Flor and the car wash is that the trial court should not have directed verdicts against them on the issue of whether Land Engineering and M and S Corp. were negligent in constructing the car wash. The trial court directed verdicts on the first count of the counterclaim against M and S Corp., James Marron and Leroy Sipe alleging negligence and breach of contract, and on the counterclaim against Land Engineering alleging that Land Engineering had negligently designed the drainage system of the car wash.

---

[5] See footnote 3, supra.

In reviewing the trial court's decision to grant the motions for directed verdicts in this case we must consider the evidence in the light most favorable to the nonmovant. *Iseli Co.* v. *Connecticut Light & Power Co.,* 211 Conn. 133, 140, 558 A.2d 966 (1989). A directed verdict is justified if on the evidence the jury could not reasonably and legally reach any other conclusion than that embodied in the verdict as directed or if the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party. *Boehm* v. *Kish,* 201 Conn. 385, 389, 517 A.2d 624 (1986). On the other hand, "[i]f the evidence presented is in conflict and more than one conclusion is reasonably open to the jury, particularly when it consists of oral testimony, and if the jury may reasonably draw different inferences from the evidence, or if the jury could be called to pass upon the credibility of witnesses or their testimony, a verdict should not be directed by the court." *Johnson* v. *Flammia,* 169 Conn. 491, 496, 363 A.2d 1048 (1975).

A

The trial court directed verdicts in favor of Leroy Sipe and James Marron on the first count of Flor's counterclaim. In that count Flor alleged that "the Plaintiffs negligently and carelessly breached [their] contract with the Defendants in that they negligently performed the work in an unworkmanlike manner . . . ." The trial court directed verdicts in favor of Leroy Sipe and James Marron because the only contractual relationship existed between M and S Corp. and the car wash. Flor and Marron signed the contract, but Marron signed in his capacity as president of M and S Corp. Because Leroy Sipe and James Marron did not sign the contract in their individual capacities, a directed verdict was appropriate on that portion of the count that alleged that they had breached their contract through their negligent conduct.

The trial court submitted to the jury the question whether M and S Corp. breached its contract with Flor through negligent conduct, as alleged in the first count of the counterclaim against M and S Corp. The jury returned its verdict in favor of Flor and awarded damages of $1. (See special verdict number 4 in case number 43905, footnote 3, supra.)

B

Flor claims that the trial court should not have directed a verdict in favor of Land Engineering on Flor's counterclaim against Land Engineering. Flor alleges that Land Engineering negligently designed the septic system, and, as a result, the system was faulty and caused a water backup problem.

In directing a verdict in favor of Land Engineering on Flor's counterclaim in 43905, the court did not offer an elaboration of its reasoning. Flor, however, had made essentially the same allegations against Land Engineering in her special defenses to Land Engineering's complaint as she made in her counterclaim against Land Engineering. Flor had an equal burden to prove the allegations in her counterclaim as well as the allegations contained in her special defenses to Land Engineering's complaint. *Atlantic Richfield Co.* v. *Canaan Oil Co.*, 202 Conn. 234, 237, 520 A.2d 1008 (1987). The trial court did not charge the jury on the special defenses contained in Flor's answer to Land Engineering's complaint because it concluded that there was no credible evidence that Land Engineering breached a contractual duty.

Flor argues that the invert of the pipe in the rinse water trench should have been installed closer to the bottom of the trench. She believes that because the invert was set six inches from the floor of the trench, the septic system backed up, causing the level of rinse water to rise and overflow the dam, which resulted in

a commingling of wash and rinse water. Car wax in the rinse water would become filthy when commingled with wash water, and when sprayed on cars, the dirty wax created a film that was not completely washed off before cars left the car wash. Keillor of Land Engineering specified the position of the pipe in the car wash.

The directed verdict against Flor was appropriate because she presented no evidence that the position of the pipe six inches from the trench floor could cause the septic system to back up. In December of 1985, the month after the car wash opened, Flor saw rinse water coming over the dam into the wash water. In May, 1987, she called the subcontractor who had installed the septic tanks. The subcontractor increased the pitch in the pipe leading from the second septic tank to the precast gallery. In July, 1987, Flor asked Richard Lombardi, a registered professional engineer, to look at the drainage system. Lombardi observed rinse water flowing through a notch in the dam. The bottom of the notch in the dam was lower than the invert of the pipe in the northern side of the trench. Pictures of the dam after construction, which were introduced into evidence by Flor, did not show the existence of the notch at that time. Sipe and Quinlan testified that there was not a notch in the dam as constructed.

Flor contends that the fact that the bottom of the trench fills up with sediment shows that the pipe was not properly placed. If the pipe were at the bottom of the trench, according to Flor, then all of the sediment would exit the trench to the septic tanks. Quinlan wanted to set the pipe lower, but he testified that if the pipe were lowered, it would have to be baffled to prevent heavy particles from clogging the pipe. Quinlan's plan for a lower pipe with a baffle would itself result in four inches of sediment in the trench. Even with the pipe set at six inches above the trench floor,

Flor had to cover the opening with chicken wire after a cloth rag became trapped and caused a backup.

The trial court concluded that the water drainage system occasionally backed up. But because of the evidence that the drainage pipe was set at the proper pitch, that the dam was higher than the invert of the pipe and that the system could dispose of 15,000 gallons of water in eight hours without a backup, it was impossible to reasonably conclude that the water backups were due to defects in the design or construction of the drainage system. There was evidence that Flor did not properly clean the trench or the septic tanks, and there was evidence, in the form of city water bills, that showed that the car wash used two to three times more water than the system was designed to handle during some months. The evidence showed that the water volume was directly proportional to the number of vehicles washed. The evidence, taken in the light most favorable to Flor, could support only the conclusion that Flor washed too many cars per month and did not adequately maintain the septic system in that she failed to remove sediment on a regular basis.

The directed verdict against Flor was appropriate for another reason. Keillor, Quinlan and Sipe met with Flor in the construction trailer at the job site to discuss the positioning of the pipe. Quinlan and Keillor had opposing views on the issue, and Flor adopted Keillor's position as a result of the meeting. Sipe later installed the pipe as Flor had decided. Thus, even on the assumption that the pipe was installed too high, as Flor contends, she chose where to install it herself.

## II

Flor's second claim is that the trial court unduly restricted the testimony of three of her witnesses[6] con-

---

[6] Gary Leavitt, Graham Curtis and Serge Demers.

cerning their examinations and measurements of the various components of the drainage trench. Through their testimony, Flor sought to show that the trench was defectively designed and constructed. Again, her fundamental claim is that the drainage pipe in the rinse section was installed too high. She also claimed that the notch in the dam was an original feature.

Her witnesses were prepared to testify, among other things, that the bottom of the notch was too close to the level of the invert of the drainage pipe, and, as a result, rinse water would occasionally rise up, flow through the notch and commingle with wash water. Flor specifically claims that it was improper to restrict the testimony of the witnesses because Lombardi testified to the exact same conditions. During Lombardi's cross-examination, however, counsel for Land Engineering showed him a photograph of the trench, marked defendant's exhibit forty-nine, which was taken by Laramy six months before Lombardi inspected the car wash. The photograph shows that there was no notch in the dam at that time. Flor's other witnesses inspected the trench later than Lombardi.[7]

The trial court possesses broad discretionary power in ruling on the relevancy of evidence. *State* v. *Mendez,* 15 Conn. App. 531, 536, 545 A.2d 587, cert. denied, 209 Conn. 810, 548 A.2d 441 (1988). Defendant's exhibit 49 showed that there was not a notch in the dam at the time of Laramy's inspection. According to Lombardi's testimony, there was a notch when he inspected the dam. On the basis of this evidence, the trial court correctly concluded that the testimony of Flor's other witnesses would not be relevant to the condition of the trench as constructed in 1985. No abuse of discretion has been shown.

[7] Gary Leavitt inspected the car wash on May 17, 1987, Serge Demers on August 12, 1987, and Graham Curtis on August 19, 1987.

## III

Flor's third claim is that appraisal reports of the value of the car wash in 1986 constituted inadmissible hearsay because they were admitted into evidence during her cross-examination.

The record shows that the following events led up to the admission of the reports into evidence. M and S Corp. began to cross-examine Flor concerning four appraisal reports. Three were prepared at Flor's request and one was prepared for Flor's bank. Counsel for Flor objected because of lack of relevancy. In an offer of proof, M and S Corp. argued that the 1986 appraisals would be relevant to damages as evidence of market value. The court allowed the cross-examination.

When M and S Corp. asked Flor what dollar amount is indicated on an appraisal dated November, 1986, counsel for Flor objected, claiming that that information was hearsay. The court asked M and S Corp. if the person who performed the November, 1986 appraisal, John Garrity, would be called to testify in the case. M and S Corp. answered affirmatively.

The court ruled that the November, 1986 report itself would be admissible for the nonhearsay purpose of showing merely that Flor had received it. M and S Corp. offered the document into evidence as an exhibit. The court instructed M and S Corp. that it should not ask questions as to the content of the appraisal until after Garrity was called to testify as a witness. Garrity was never called.

On the next day of trial, M and S Corp. offered a January, 1986 appraisal as an exhibit and counsel for Flor objected as before. The trial court admitted the report into evidence and allowed M and S Corp. to

cross-examine Flor as to its contents even though no one from the business that had conducted the appraisal, Edward F. Herberger Associates, was called to testify. In response to a question from M and S Corp., Flor stated that the November 1986 report indicates that the market value of the car wash was $655,000.

The appraisal reports contained statements of fact as to the market value of the car wash, which became hearsay evidence when the documents were introduced through Flor, who did not conduct the appraisals and who had no personal knowledge of the value of the facility. See *United States* v. *Williams,* 661 F.2d 528, 530 (5th Cir. 1981). M and S Corp. contends that because the appraisals were prepared for Flor at her request and were used by her to obtain bank financing, they constitute her business records and are therefore admissible pursuant to General Statutes § 52-180.

For a document to be admitted as a business record, it must meet the following criteria: (1) the document was made in the regular course of business; (2) it was the regular course of business to make such a record; and (3) the record was made when the act, transaction or event occurred, or shortly thereafter. *State* v. *Damon,* 214 Conn. 146, 156–57, 570 A.2d 700 (1990). In the present case, the trial court made no such findings because M and S Corp. did not present the argument that the appraisal reports were Flor's business records. Compliance with the three qualifications is a prerequisite to admissibility. *State* v. *Kwaak,* 21 Conn. App. 138, 150, 572 A.2d 1015 (1990). "[W]e can consider the propriety of the trial court's ruling only on the basis of what was said at trial." *DuBose* v. *Carabetta,* 161 Conn. 254, 265, 287 A.2d 357 (1971). By instructing M and S Corp. that it could not cross-examine Flor as to the contents of the November, 1986 appraisal report until after Garrity was called to testify, the trial court, in effect, ruled that the contents

of that report were inadmissible hearsay. It appears that the court inadvertently allowed cross-examination as to the contents of the January, 1986 report the next day. We disagree with the contention of M and S Corp.

M and S Corp. cites *Crest Plumbing & Heating Co. v. DiLoreto,* 12 Conn. App. 468, 531 A.2d 177 (1987), for the proposition that the appraisal reports were business records because Flor used them to obtain bank financing. In *Crest Plumbing,* we stated: "There is no requirement in § 52-180 . . . that the documents . . . be prepared by the organization itself to be admissible as that organization's business records." Id., 475. The records involved in *Crest Plumbing* were six engineering reports prepared by a construction management firm at the behest of a bank. Because an officer of the bank testified that it was in the bank's general course of business to keep a record of the reports; id., 473; we held that "such a record could reasonably be found to have been made in the course of the bank's business." Id., 476. The present case is distinguishable in that no employee of the car wash testified that it was within the general course of business of the car wash to keep records of the appraisal reports.

Although Flor was qualified, as the owner of the car wash, to offer an opinion as to its market value; *Misisco v. La Maita,* 150 Conn. 680, 684, 192 A.2d 891 (1963); M and S Corp. did not seek to cross-examine her as to her own opinion, but as to the opinions she received from others through the appraisal reports.

The trial court should not have allowed M and S Corp. to cross-examine Flor as to the contents of the January, 1986 appraisal report and should not have admitted the reports into evidence as exhibits in the absence of testimony from those who made the appraisals. We next consider whether that evidence was harmful to Flor. *Casalo v. Claro,* 147 Conn. 625, 630, 165 A.2d 153 (1960).

The appraisal reports were evidence of market value, and market value was a fact relevant to the issue of damages for breach of contract. Flor argued that the measure of damages should be the cost of repairing the alleged defects in the car wash as constructed. M and S Corp. argued that Flor should not be allowed to recover the cost of restoration unless there was evidence that that measure of damages was lower than the diminished value of the car wash because of the defects. In *Levesque* v. *D & M Builders, Inc.,* 170 Conn. 177, 181, 365 A.2d 1216 (1976), our Supreme Court adopted the rule that damages for breach of contract with respect to real property are limited to the diminished value of the property whenever expectation damages greatly exceed that amount. The purpose of this rule is to avoid unreasonable economic waste. *Spera* v. *Audiotape Corporation,* 1 Conn. App. 629, 633, 474 A.2d 481 (1984).

M and S Corp. introduced the evidence of the appraisal reports for the purpose of showing that the value of the car wash increased from 1985 to 1986 despite the alleged defects. From this, M and S Corp. argued that Flor did not suffer any diminished value in her car wash and that, therefore, in light of *Levesque,* she should not recover the cost of restoration. This argument fails to take into consideration that contract damages are measured from the time of the breach, and that the breaching party cannot benefit from a subsequent rise in the market value of the contract res. *Vines* v. *Orchard Hills, Inc.,* 181 Conn. 501, 513, 435 A.2d 1022 (1980). It also disregards the rule that "diminution in value may be determined by the cost of restoration, if that cost does not exceed the former value of the property and if the restoration does not enhance the value of the property over what it was before the injury." *Spera* v. *Audiotape Corporation,* supra.

The jury awarded nominal damages to Flor on three separate counts, but none of those awards was based on the argument espoused by M and S Corp. that the cost of restoration was not the measure of damages because of the evidence of an increase in market value. The jury awarded nominal damages to Flor in the second count of her complaint against Sherman East in case number 45565. On that count, the trial court instructed the jury that there was no evidence that Flor suffered any damages as a result of the alleged breach of contract on the part of Sherman East in installing car wash equipment. The trial court's instruction was based on the fact that Flor's witnesses, who testified to damages, did not inspect the car wash until 1987. The instruction was not based on the argument that the cost of repair should not be the measure of damages in this case.

The jury also awarded nominal damages in two separate verdicts against M and S Corp. in case number 43905. In her counterclaim against M and S Corp., Flor alleged in one count that M and S Corp. had breached its contract and, in another count, that M and S Corp. had misrepresented the total cost of construction in order to induce Flor into hiring M and S Corp. The court interpreted the count alleging misrepresentation as alleging *intentional* misrepresentation, or fraud. This determination was based on Flor's use of the terms "fraud" and "intentional misrepresentation" in her second, fourth and seventh special defenses to the complaint of M and S Corp.

The trial court properly instructed the jury that the measure of contract damages for intentional misrepresentation is the amount of diminution in the value of the bargain suffered by Flor because of the alleged nondisclosure.[8] See *Pacelli Bros. Transportation, Inc.*

---

[8] The court instructed the jury as follows: "[T]he defendants must show [that] what they received in the car wash land plus building and equipment,

v. *Pacelli,* 189 Conn. 401, 410, 456 A.2d 325 (1983); *Miller* v. *Appleby,* 183 Conn. 51, 57, 438 A.2d 811 (1981). At trial, the court ruled that evidence relating to the appraisal reports would be "probative to this jury to determine the reasonableness of the building costs in view of the value of the [completed] project." Also, it was clear from the court's instruction to the jury that the appraisal reports were to be used by the jury in determining the amount of damages Flor would receive for misrepresentation. On the basis of the trial court's instructions, the jury returned a verdict for Flor, but awarded only nominal damages.

The same result would have occurred had the evidence of the appraisal reports not been admitted. Flor had the burden of proving damages for intentional misrepresentation. *Pacelli Bros. Transportation, Inc.* v. *Pacelli,* supra. Consequently, she had to produce evidence of the market value of the car wash in November, 1985, when construction was completed. Flor chose

---

was worth less than they paid for, that the defendant did not get what they bargained for. This is measured by the difference in value of the property at the time the car wash was completed than one would have been worth if [constructed as] represented. You first have to determine the value of the property at the time of the completion of the car wash, price paid by the defendant, including cost of construction. You must determine the total cost of the car wash on July 16, 1985, of the entire car wash. And from the amounts determined, you must deduct what the value of the property was actually in light of all the facts when the plaintiffs completed the car wash. This is the property's market value, and you must properly regard that market value as the measure of the true value of the property. The difference between these two amounts is the measure of damages the defendants are entitled to recover. In other words, did the defendants get less than they bargained for, was the market value of the property less than what they actually received, or did they receive what they bargained for and more? If you determine that all the necessary elements of a misrepresentation had been proven by Holly Flor and New Milford Car Wash by a preponderance of the evidence, you then still must determine that the value of the property exceeds the total cost of construction or not. If it does, then Holly Flor and New Milford Car Wash had not proven damages. Therefore, again, you would find only the nominal damages, for example, than one dollar."

not to introduce her appraisal reports into evidence for tactical reasons. Had the reports not been admitted by the trial court through cross-examination of Flor, there would have been no evidence of an element of damages for intentional misrepresentation. Thus, we find that the admission of those reports was harmless with respect to the count alleging misrepresentation.

Finally, we consider whether the admission of the reports was harmless with respect to the count in Flor's counterclaim alleging breach of contract on the part of M and S Corp. The court instructed the jury that the sole issue with respect to this count was whether M and S Corp. breached its contract with Flor by negligently installing drainage piping from the car wash to a drainage trench on the property of Tobin. The court specifically instructed the jury that the measure of damages would be the actual cost of removing the pipes and constructing a trench in another location. The appraisal reports had nothing whatsoever to do with this count.

## IV

We now consider the claim made by M and S Corp. M and S Corp. claims that the trial court should not have overturned the jury's verdict in its favor on the third count of its complaint in case number 43905, which alleged that Flor had breached her contractual obligation to give M and S Corp. a mortgage on certain of her property.[9]

---

[9] In its memorandum, the trial court explained its action as follows: "The jury rendered a verdict in the amount of $9229.75 on said count. The jury also found in the first count of the same complaint that the defendants were not liable to the plaintiffs on any contractual basis. Rather, the jury found for the plaintiffs on a quantum meruit basis only. The jury was charged that if there was no 'contract obligation to give a mortgage' they were to check the appropriate box on the verdict form. The court concludes that the jury was mistaken in the apparently conflicting verdicts regarding the matter of contractual obligations. It cannot disallow recovery under an

The trial court ordered that separate verdicts be submitted to the jury in order to avoid the implication of a general verdict. See *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 202, 520 A.2d 208 (1987). In *Booker* v. *Stern*, 19 Conn. App. 322, 328, 563 A.2d 305 (1989), the trial court instructed the jurors prior to submitting separate verdicts to them, that two of the verdicts contained alternative theories of liability and that if they found in favor of the plaintiff on one theory, they should not consider the other. We therefore look to the trial court's jury instructions concerning how to answer the separate verdict forms corresponding to the counts in the complaint of M and S Corp. to determine if they provide a basis for the court's decision to overturn the jury's verdict as to the third count.

On the basis of the trial court's instructions, we conclude that the jury's verdicts on counts one and three are inconsistent and that the trial court correctly overturned the verdict as to the third count, rather than the verdict as to the first count.

"Although consistency of verdicts in criminal cases is not required; *Harris* v. *Rivera,* 454 U.S. 339, 102 S. Ct. 460, 70 L. Ed. 2d 530 (1981); *Hamling* v. *United States,* 418 U.S. 87, 101, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974); *Dunn* v. *United States,* 284 U.S. 390, 393, 52 S. Ct. 189, 76 L. Ed. 2d 356 (1932); *State* v. *Rosado,* 178 Conn. 704, 709, 425 A.2d 108 (1979); in civil cases when a verdict rests upon a factual finding contradictory to another finding of the same issue by the trier the judgment cannot stand. *Marko* v. *Stop & Shop, Inc.,* 169 Conn. 550, 556, 364 A.2d 217 (1975); *Fabrizi* v.

alleged contract in one instance and in another instance allow recovery under a term of that alleged contract. Further, the court, upon reflection, finds that there was insufficient evidence upon which the jury could have concluded that the mortgage claim of the plaintiffs was proven on any other basis. Accordingly, the verdict on count three of the amended complaint is set aside."

*Golub,* 134 Conn. 89, 94, 55 A.2d 625 (1947); *O'Brien* v. *Connecticut Co.,* 97 Conn. 419, 422, 117 A. 498 (1922); 76 Am. Jur. 2d, Trial § 1154." *Magnan* v. *Anaconda Industries, Inc.,* 193 Conn. 558, 577, 479 A.2d 781 (1984). The court instructed the jury that the first and second counts were alternative theories of liability. The first count sought recovery based on a contract, while the second count sought the reasonable value of goods and services in case the jury found that no contract existed. The court did not explain that if they found for Flor on the first count, based on a conclusion that no contract existed, then they could not find for M and S Corp. in the third count. However, because of the court's instruction that the second count contained an alternative theory of liability to that contained in the first count, and because the jury found for M and S Corp. in the second count, the trial court had a reasonable basis for concluding that the jury had found that no contract existed. Thus, the trial court simply acted to effect the jury's intent when it overturned the verdict on the third count.

We conclude that the jury returned a verdict for M and S Corp. on the third count out of confusion that arose because of the trial court's failure to instruct the jury as to the logical relationship between the first and third counts. Under the circumstances of this case, therefore, we hold that the decision to overturn the verdict in the third count was proper.

CASE NUMBER 45565

Case number 45565 began on April 9, 1987, when Flor sued Sherman East, alleging in one count that Sherman East supplied the car wash with defective equipment, in a second count that Sherman East negligently installed that equipment and in a third count that Sherman East breached an implied warranty of merchantability by supplying and installing defective equip-

ment.[10] The trial court directed verdict in favor of Sherman East on the first and third counts and submitted the second count to the jury. The jury found in favor of Flor and awarded $1 as damages. On February 23, 1988, the trial court denied the plaintiff's motion to set aside the directed verdict.

The trial court directed a verdict against Flor and the car wash on the first and third counts of the complaint against Sherman East for supplying and installing defective car wash equipment. Flor claims that the trial court should not have directed verdict on these counts, and, also, that the court should not have excluded evidence offered by Laramy, an employee of Sherman East.

Flor fails to supply this court with any reason to disturb the trial court's decision to direct a verdict in favor of Sherman East on the first and third counts. Flor states in her brief that the trial court should not have directed a verdict against her on the issue of whether Sherman East negligently installed a sediment pipe in the car wash. The only mention of negligence in Flor's complaint, however, appears in the second count, which the trial court submitted to the jury. The jury returned the following verdict: "On the Second Count of the complaint of Plaintiff New Milford Car Wash, Inc. claiming negligent installation, the jury finds the issues for the Plaintiff New Milford Car Wash, Inc. and against the Defendant $1.00 damages."

Flor's second claim concerns the second count of her complaint against Sherman East for negligent installation of car wash equipment in case number 45565. This count was submitted to the jury and the jury returned a verdict for Flor but awarded damages of only $1. Flor claims that the court should have allowed

---

[10] On July 27, 1987, the trial court granted Flor's motion to consolidate cases number 43905 and 45565.

the testimony of Laramy on the cost of repairing improperly installed car wash equipment. She states in her brief that if this testimony had been allowed, "it is likely that the jury would have awarded . . . damages."

Before turning to the merits of Flor's second claim we note, for the sake of clarification, that the jury awarded Flor nominal damages of $1 based on the trial court's instructions. The court charged the jury that, "[f]or whatever reason, there was no evidence presented as to what these damages Holly Flor and New Milford Car Wash sustained as a result of any negligence by Sherman East. In such a case, even though no actual damages have been proved, that does not end the matter because this is one of those cases where the law provides for what are sometimes called nominal damages. In other words, if you find Sherman East was negligent, then you must bring in a verdict for Holly Flor and New Milford Car Wash stating some nominal amount." If there was no evidence as to damages, then this instruction was proper because it is improper for a court to submit to the jury an issue that is wholly unsupported by the evidence. *Wassell* v. *Hamblin,* 196 Conn. 463, 470, 493 A.2d 870 (1985). Moreover, "[t]o authorize a recovery of more than nominal damages, facts must exist and be shown by the evidence which affords a reasonable basis for measuring the plaintiffs' loss." *Johnson* v. *Flammia,* supra, 501.

Flor does not challenge the trial court's finding that there was no evidence on damages. Rather, she claims that the reason there was no evidence on damages is that the court improperly excluded Laramy's testimony on that issue. The trial court has broad discretion in ruling on the admissibility of evidence, and, absent a showing of clear abuse of discretion, we will not dis-

turb the trial court's determinations as to the relevancy of evidence. *State* v. *Parker,* 197 Conn. 595, 601, 500 A.2d 551 (1985).

Flor sought to submit an exhibit into evidence that consisted of billings Laramy had sent to Flor for the work he had done to repair various problems with the conveyor system. Damages are measured as of the date of the breach of contract. *Levesque* v. *D & M Builders, Inc.,* supra. Because the conveyor system was installed in 1985, Sherman East's contract with Flor was breached, if at all, at that time. Laramy found that some of the welds on the conveyor track were broken, but his inspection occurred in 1987. Laramy's bills were not evidence of the cost of repair at the time of the alleged breach of contract, and, therefore, the trial court was within its discretion to exclude the bills from evidence as irrelevant to any material issue. See *Kevin Roche-John Dinkeloo & Associates* v. *New Haven,* 205 Conn. 741, 749-50, 535 A.2d 1287 (1988).

The judgment is affirmed.

In this opinion the other judges concurred.