[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Frank Castronovo and Yolanda Castronovo were the owners of a residence at 3 Cottage Place, Greenwich, Connecticut. The defendants, Brian Bloom and Earl McGlumphy, were each 50% partners in B B Construction ("BBC").
On October 18, 1992, the parties entered into a poorly drafted hand written agreement to perform certain renovations at the Cottage Place residence for a contract price of twenty-three thousand dollars. The sum of eight thousand dollars was paid by the plaintiffs upon the signing of the contract.
Brian Bloom had a State of Connecticut Home Improvement Contractors license for BBC. The hand written contract did not contain a notice of cancellation rights in accordance with Connecticut General Statutes §§ 20-429(a)(6) and 42-135a; nor did it specify a starting date and completion date as required by § 20-429(a)7.
BBC commenced construction shortly after the contract signing. On November 2, 1992, high wind and rain blew the tarp off the roof CT Page 2652 area where BBC had been working. There was conflicting testimony as to which party was going to file a claim for the water damage. The defendant claimed that he told plaintiffs that he would notify BBC's insurance agent. He claims to have done so but no one from the insurance company contacted the plaintiffs.
Again, on November 22, 1932, rain accumulated on a flat roof and a hole in the roof, caused by one of the workmen, allowed water to leak into the premises causing considerable damage. Brian Bloom and Earl McGlumphy came the next day, saw the situation and prior to leaving, told the plaintiffs that they would call their insurance agent.
There was no evidence that defendants' insurance carrier ever contacted the plaintiffs regarding the water damage of November 2, 1992 or November 22, 1992. The plaintiffs filed a claim under their homeowners policy.
The plaintiffs, claiming that they were not satisfied with the quality and progress of the construction, decided to terminate the contract on November 22, 1992. They hired a licensed public adjuster on November 23, 1992 and sent a letter, by certified mail, on November 24, 1992 to BBC Construction terminating the contract. The letter was received by BBC on November 27, 1992.
Based on the testimony of the plaintiffs and the various artisans who inspected and then replaced and/or repaired the work performed by BBC, the plaintiffs were justified in terminating the services of the defendants.
There was testimony that the roof shingles were improperly installed. There was testimony that the siding was installed in an improper manner and without insulation. Although the hand written contract did not call for insulation with respect to the vinyl siding, the testimony of an experienced siding installer, Andrew Papastravros, leads this court to believe that proper installation of siding calls for insulation. Also, he provided credible testimony that the siding done by BBC was improperly installed and would "buckle up" if not completely redone.
The two incidents which resulted in water damage clearly demonstrated an inability of the defendants to perform in a good workmen like manner.
The plaintiff's insurance carrier paid the plaintiffs CT Page 2653 $15,744.60 with respect to water damage to their home and $2,734.83 with respect to water damage to the contents of their home. The defendants maintain that plaintiffs are not entitled to recover damages as the amount that they have recovered from their insurance carrier, together with the balance that they would have had to pay under the existing contract, exceeds the amount of monies paid by the plaintiffs to date, to repair the alleged water damage, correct the alleged improper work, and complete the contract.
The plaintiffs acknowledged that they received a total of $18,479.43 from their insurance carrier. Mr. Castronovo testified that none of the claims in this lawsuit were paid by the homeowner's insurance carrier. The court agrees with the plaintiff.
As a general rule, in awarding damages upon a breach of contract, the prevailing party is entitled to compensation which will place him in the same position he would have been in had the contract been properly performed. Leverque v. D M Builders,Inc., 170 Conn. 177.
The court finds damages in favor of the plaintiff in the amount of $15,010.87, calculated as follows:
BBC CONSTRUCTION CONTRACT PRICE $23,800.00
PAYMENTS MADE BY PLAINTIFFS
 10-18-92 9,000.00 11-16-92 4,000.00 -------- TOTAL PAID $13,000.00
WORK PAID AND COMPLETED TO FINISH BBC'S CONTRACT
 DINO BUILDERS VINYL SIDING $ 8,400.00 FLOORING 222.04 SECOND FLOOR DECK 2,900.00 PRUZINSKY CONSTRUCTION HANG DOOR 175.00 SECOND FLOOR TRIM, FIRST FLOOR TRIM, 5,590.00 BASEMENT BATHROOM, FRAME FOR A/C, ALL INTERIOR WORK "FINISHED" EUGENE CARLIN TAPE BASEMENT CLOSET 30.00 CT Page 2654
ITEMS DONE AND PAID TO CORRECT OR REPAIR DEFECTIVE WORK
DINO BUILDERS EMERGENCY ROOF REPAIR 300.00 EUGENE CARLIN EXTEND CHIMNEY 518.00
ITEMS NOT YET DONE TO CORRECT OR REPAIR DEFECTIVE WORK
DINO BUILDERS REPAIR DAMAGE TO DECK AND FENCE, REPAIR 6,800.00 PART OF OAK FLOOR, REPLACE TWO BIFOLD DOORS, TRACKS AND BARS, PROPER ATTIC WINDOW, FRAME ATTIC DOORWAY, EXTERIOR DOOR AWNINGS, REMOVE ROOF SHINGLES IN VALLEY AND REPLACE WITH RUBBER ROID AND 7 NEW SCREENS WITH FRAMES IMROGNOS REPLACE RUG 875.00 ------ TOTAL AMOUNT NEEDED TO COMPLETE AND CORRECT $25,810.87 LESS BALANCE DUE ON CONTRACT — 10,800.00 --------- TOTAL DAMAGES AWARDED $15,010.87 ==========
The defendants undisputed failure to comply with the provisions of Connecticut General Statutes §§ 20-429(a)(6) and20-429(a)(7) is a per se violation of CUTPA by virtue of General Statutes § 20-427(c). However, the court finds that no evidence was introduced that the plaintiffs suffered any damages arising from the Home Improvement Act Violation. A. Secondino Sons, Inc. v.LoRico, 215 Conn. 336.
The next question before the court is whether or not the defendant Brian Bloom is jointly and severally liable with his partner Earl McGlumphy for any damages awarded in this action. The plaintiff filed a withdrawal as to Earl McGlumphy on March 24, 1994.
General Statutes § 34-53 provides: "[a]ll partners are liable" (a) jointly and severally for everything chargeable to the partnership under sections 34-51 and 34-52; (b) jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership CT Page 2655 contract." General Statutes § 34-51 applies to wrongful acts or omissions of a partner, and § 34-52 applies to misapplication of funds by a partner. Thus, a breach of contract is to be considered "all other obligations of the partnership" for which partners are jointly liable.
Blacks Law Dictionary defines joint liability as "[l]iability that is owed to a third party by two or more other parties together. One, wherein joint obligor has right to insist that co-obligor be joined as a codefendant with him, that is, that they be sued jointly." BLACKS LAW DICTIONARY 838 (6TH ED. 1990).
"The liability of partners upon contractual obligations is joint. Kessler v. Lerner, 15 Conn. Sup. 288, 289 (1948).
The initial partners in this action would have been jointly liable to the plaintiffs for breach of contract. Thus, the defendant, Brian Bloom, is only responsible for 50% of the damages awarded.
The court finds for the plaintiffs and awards damages of $15,010.87 of which defendant Brian Bloom is responsible for $7,505.44.
So Ordered.
Dated at Stamford, Connecticut this 25th day of March, 1996.
RICHARD J. TOBIN, JUDGE