[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs Frank and Debra Calabrese have brought this action against the defendant Finno Development, Inc., seeking damages for the failure of the defendant to properly construct the roof of their new home. In their one count complaint, the plaintiffs claim that the defective construction constitutes a breach of contract for which the defendant is liable for money damages.
The court finds the following facts. On December 16, 1992, the plaintiffs entered into a contract with the defendant, who was in the business of building new homes, to have a new home constructed on Lot 76 on Heritage Drive in Prospect, Connecticut. The contract provided for the plaintiffs to pay the defendant a total of $220,000 for the house and lot, with the closing to take place at the conclusion of construction. The contract contained the following provisions:
3. Seller shall perform all work in a good, workmanlike and substantial manner. Sellers represent that all work shall conform to all state and local laws, including, without limitation, the Building Code of the State of Connecticut and the ordinances of the Town of Prospect, CT
. . . 8. At the closing, Seller shall furnish Purchaser with proof that all necessary building and occupancy permits have been obtained, [and] that the health or other authorities of the Town of Prospect, CT, have approved any matters which require the approval of such Town authorities. . . .
The defendant had built other homes in Prospect in the recent past. In doing so, the defendant had had occasion to consult with William Scarpati, the building official for the town who was in charge of inspections of new home construction and decisions about issuing certificates of occupancy. It was Mr. Scarpati's opinion that the state building code, used by the town as its own standard for home construction, did not require the use of a paper barrier under asphalt roofing shingles. CT Page 15414 At that time, Mr. Scarpati believed that the use of a paper barrier between the plywood and the shingles on a roof caused an excessive amount of moisture to build up, such that there was an acceleration of roof deterioration. Others in the construction trade also held this opinion in 1992 and 1993. Mr. Scarpati told the defendant that paper underlayment should not be used on the roofs under construction by the defendant during that period of time.
The defendant proceeded to construct the Heritage Drive home without using paper underlayment on the roof. Scarpati performed all required inspections on the house and issued a certificate of occupancy on April 14, 1993, indicating that the home was properly constructed. The plaintiffs and the defendant scheduled a closing for the next day.
The closing, by all accounts, was long and contentious, having nothing to do with the roof. As far as the plaintiffs knew, and as far as the defendant knew, the roof was properly constructed and was in compliance with the applicable building code, as interpreted by the appropriate building official. But other items on a "punch list" were in dispute, such as the location of an electric connection box, various nail pops, unprofessional installation of a particular carpet, and the fact that the dishwasher was not level. The parties were tense and the negotiations were arduous. At the end of the day, literally, the parties reached a compromise: the plaintiffs agreed to close and take title and possession per the contract, but the defendant agreed to relocate the electrical box and to pay $2600 outside of the closing to settle the disputed claims of the plaintiffs. The plaintiffs signed a release in favor of the defendant and other subcontractors which read:
 [The buyer/Releasor] releases and discharges Finno Development, Inc. . . . from all actions, causes of action, suits, . . . claims, and demands whatsoever, in law, admiralty or equity, which against the Releasee, the Releasor . . . ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Release. Specifically without limiting the foregoing any and all claims arising out of, by or from the construction or sale of the premises at 31 Heritage Drive, Prospect, CT. Excepted from this release are any claims arising out of Warranty claims or out of Agreement dated 4/15/93 by and between Calabreses Finno Dev., Inc. concerning relocation of transform [?] utilities box. CT Page 15415
Not quite six years later, in January 1999, an extraordinary winter storm occurred, one that drove freezing water under some of the shingles on the home. Leaks occurred that caused damage to four interior ceilings. The plaintiffs had the roof inspected and learned that no paper underlayment existed under the shingles. The plaintiffs also learned that a literal reading of the state building code in effect in 1992 and 1993 required such a paper barrier under the shingles. The plaintiffs commenced this lawsuit against the defendant on March 25, 1999, for breach of contract. As relief they ask for an amount of money sufficient to fully replace the roof, an amount that is either $6400 or $3800 depending upon how the court construes the evidence.
The defendant raises three main issues in response: that the defendant did not breach the contract; that, as pleaded in its special defense, the release bars this action; and that the plaintiffs have failed to prove appropriate contract damages. The court finds for the defendants on each of these contentions.
BREACH OF CONTRACT
First, the plaintiffs have failed to prove breach of contract. The failure of the defendant to construct the roof according the proper code standards might have been considered a material breach of contract before the closing, entitling the plaintiffs to rescind the contract. That was no longer the case once both parties to the real estate purchase exchanged money for a warranty deed. The Connecticut rule is that the terms of the contract to purchase real estate merge into the deed. See Knight v.Breckheimer, 3 Conn. App. 487, 490, 489 A.2d 1066 (1985). Thus once a conveyance has been completed by deed, there can be no action for breach of the real estate contract, absent unusual circumstances. See Williston on Contracts, 4th Ed., § 50:28[1].
The facts of this case show no unusual circumstances presenting a reason to depart from this rule. As illustrated by the court's findings, there was no fraud, deceit, or misrepresentation on the part of the defendant in either the construction of the roof or in the manner in which the property was delivered to the plaintiffs. Rather the defendant himself thought he was in compliance with all terms of the contract. Nor, as discussed below in the section on damages, was the roof actually defective in any functional way.
Understanding that the merger rule can sometimes yield harsh results, legal commentators and lawmakers have criticized it, especially in the CT Page 15416 sale of newly constructed residences. See Williston on Contracts, 4th Ed., § 50:30. The result in Connecticut has been the enactment of the New Home Warranties Act, Conn. Gen. Stat. §§ 47-116 et seq. The Act permits the parties in their contract to create express warranties that can survive merger. Also under the Act, certain implied warranties survive merger into the deed. Among these are warranties that the seller constructed the home "according to sound engineering standards, . . . [and] constructed [it] in a workmanlike manner. . . ." Conn.Gen. Stat. § 47-118 (a) (2) and (3). The Act specifies that any express warranties shall terminate one year after the buyer takes possession. Conn. Gen. Stat. § 47-117 (d). The Act provides for a statute of limitations for implied warranties: "three years next from the date of the issuance of such certificate of occupancy." Conn. Gen. Stat. §47-121.
This court finds that there were no express warranties created here. As for the claim for breach of implied warranties, that action became time-barred in 1996; moreover, the plaintiffs, in their post-trial brief, state explicitly that they make no claim based upon implied warranties. Brief of Plaintiffs, p. 23. The plaintiffs cannot recover for any breach of the real estate sales contract in this case.
THE RELEASE
Even if the plaintiffs were able to persuade the court that the doctrine of merger does not apply, so that they can maintain an action for breach of contract, the defendant has proved its special defense that the release signed by the plaintiffs at the closing bars their claim for damages. The language of the release is broad and comprehensive. It excepts only two items: "claims arising out of Warranty claims or out of Agreement dated 4/15/93 by and between Calabreses Finno Dev., Inc., . . ." The defendant paid $2600 for the release and evidently performed additional services in connection with the relocation of the electric box, the subject of the 4/15/93 agreement.
The plaintiffs argue that the term "Warranty claims" in the release means all promises of performance contained in the original contract, such as the promise to construct the house to the standards of the applicable code. But if the court adopts that interpretation, then the release is rendered virtually meaningless, since the plaintiffs could then hold the defendant liable for any unfulfilled promise in the original contract: the defendant would be released from nothing.
Rather the court finds that the only "Warranties" to which the release can possibly refer are the statutory warranties in the New Home Warranties CT Page 15417 Act. The court need not decide whether there was any such breach of warranty, because, as previously discussed, such a claim is time-barred.
MEASURE OF DAMAGES
Even if the court found that the defendant breached the real estate sales contract, and found that the release did not insulate the defendant from liability, the defendant would still prevail because the plaintiffs have failed to prove the damages.
The plaintiffs ask for an amount of money to construct a new roof, presumably on the theory that the current roof is defective. The evidence does not support this claim.
The roof on the home is structurally sound in all respects. The evidence does not support the plaintiffs' contention that it was the absence of a paper barrier that lead to the leaks in January of 1999. Both sides offered testimony by roofers about the effect of paper underlayment. While such a barrier adds another layer of protection, it is not a guarantee against leaking. The manufacturer of the shingles used on the Calabrese home warranted the shingles regardless of whether they were installed with or without a paper barrier. The evidence fails to persuade the court that it was the absence of underlayment that caused the leaks to occur. Rather the weather event that occurred in January of 1999 was one that was as likely to have driven freezing rain through the seams and nail holes of a paper barrier as it did under the shingles and through plywood. This event was the sole instance of problems with the roof. The plaintiffs are not entitled to the cost of replacing their roof if their roof is otherwise sound. The weightier evidence is that the roof, though not built in compliance with the building code, is not functionally defective.[2]
Alternatively, the plaintiffs claim that they failed to get the benefit of the bargain, and that the value of their home upon resale will be diminished because the roof was not constructed according to the strict requirements of the building code. The diminished value of the property is a proper measure of damages in circumstances where an otherwise functional piece of construction is built in a manner other than as expected by the plaintiff. See Levesque v. D M Builders, Inc.,170 Conn. 177, 181, 365 A.2d 1216 (1976); Johnson v. Healy, 176 Conn. 97,105, 405 A.2d 54 (1978). This measure of damages is designed as one of practicality and as one that prevents economic waste. Id.
The evidence in this case is that the roof was not defective, that it is already ten years old, and that the reasonable life of roof shingles, CT Page 15418 with or without underlayment is twenty years. The cost of installing a brand new roof is not an appropriate measure of damages under these circumstances. Rather the diminished value of the property provides the proper measure of damages.
The plaintiffs have failed to offer any evidence on this point, however. The court cannot base an award of damages on the assumption that the value is necessarily diminished; nor can the court resort to guesswork or speculation as to what that diminished value may be. Even if the plaintiffs had proved every other element of their claim, they have failed to prove damages.
CONCLUSION
For all of the reasons discussed, the court finds the issues in favor of the defendant and against the plaintiffs.
Patty Jenkins Pittman, Judge