HOUSING AUTHORITY OF THE TOWN OF EAST HART-
FORD *v.* EUGENE OLESEN ET AL.
(11046)

O'CONNELL, LANDAU and SCHALLER, Js.

Argued January 7—decision released May 18, 1993

*John F. Sullivan,* with whom, on the brief, was *Ralph J. Alexander,* for the appellant (plaintiff).

*Pamela A. Mitchell,* with whom was *Nancy A. Hronek,* for the appellees (defendants).

O'CONNELL, J. The plaintiff housing authority[1] appeals from the judgment in favor of the defendants[2] in this summary process action based on the defendants' failure to pay their April, 1988 rent. The plaintiff claims that the trial court improperly (1) construed the plaintiff's duty under federal law to inspect for lead-based paint, and (2) applied General Statutes § 47a-4a to the facts of this case. We affirm the judgment of the trial court.

In November, 1986, the plaintiff and the defendants entered into an automatically renewable month-to-month written lease for an apartment in East Hartford. The apartment is a federally subsidized public housing unit governed by applicable state law and § 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437, and its implementing regulations in title 24 of the Code of Federal Regulations.

As a result of the defendants' failure to make their April, 1988 rent payment, the plaintiff caused a notice to quit to be served on the defendants, ordering them to quit possession of the premises on or before April 25, 1988. When the defendants did not vacate the premises, the plaintiff commenced this summary process action. Subsequently, the East Hartford health department removed samples of peeling paint from the premises and forwarded them to the state department of health services laboratory where analysis revealed that the paint had a lead content in excess of that permitted by federal and state standards.[3] The plaintiff took immediate action and the problem was corrected within two weeks.

---

[1] The plaintiff is a municipal housing authority created pursuant to chapter 128 of the General Statutes.

[2] The defendants, Eugene Olesen and Nancy McCormick-Olesen, were parties to the rental agreement.

[3] The parties stipulated that the lead content of the paint exceeded the amount permitted by the Lead-Based Paint Poisoning Prevention Act, chap-

Thereafter, the defendants filed an amended answer that raised several special defenses including two alleging that the presence of the lead-based paint obviated their obligation to pay rent for April, 1988.[4] The matter proceeded to trial and the trial court rendered judgment for the defendants. The plaintiff appealed.

The dispositive issue in this case is whether the presence of paint with a lead content in excess of relevant federal and state standards bars the collection of rent even if the landlord is not aware of the problem at the time of nonpayment. The plaintiff first claims that the presence of lead-based paint should not act as a bar to the collection of rent because it fully observed the federal regulation in effect at the time, which required paint inspections only at unit turnover or as part of routine periodic unit inspections. See 24 C.F.R. § 965.704 (1988). The plaintiff maintains, therefore, that it was under no duty to inspect the premises for lead-based paint at the time of nonpayment. We note that although the trial court found the plaintiff to have such a duty, we decline to address this issue because it is irrelevant to the disposition of the appeal.

The outcome of this case is not governed by the frequency of inspection required by federal law. Rather, the outcome of the case is controlled by the clear mandate of state law. While the federal regulations set forth various components of a landlord's duty in lead-based paint abatement, they also expressly state that the landlord must comply with state and local law. "Nothing in this subpart [governing lead-based paint poisoning

ter 63 of the Social Security Act. Because General Statutes § 47a-8 has incorporated that standard, the lead content of the paint also exceeded that permitted by state law.

[4] The first of these two special defenses alleged a violation of General Statutes § 47a-7 (a) (2) and the second alleged violations of subdivisions (1) through (4). Because we find the first special defense to be dispositive of this appeal, we do not address the second.

prevention] is intended to relieve a [public housing authority] of any responsibility for compliance with state or local laws, ordinances, codes or regulations governing lead-based paint testing or hazard abatement." 24 C.F.R. § 965.706 (1988); see 24 C.F.R. § 965.710 (1992); see also *Connelly* v. *Housing Authority,* 213 Conn. 354, 356 n.2, 567 A.2d 1212 (1990) (federally subsidized housing is subject to applicable state law).

Our state law provides a broad range of statutes and regulations governing lead-based paint testing and abatement.[5] Included in that body of law is the statutorily established affirmative duty of a landlord to do *whatever* is necessary to put and keep the premises in a fit and habitable condition, including its being free of paint with an impermissible lead content. This duty has its provenance in General Statutes § 47a-7 (a), which imposes a number of responsibilities on the landlord including the mandate in subdivision (2) that a landlord "make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition . . . . " The expansion of that duty to include lead-based paint abatement is unequivocally furnished by General Statutes § 47a-8, which provides in relevant part that "[t]he presence of paint which does not conform to federal standards as required in accordance with the Lead-Based Paint Poisoning Prevention Act, Chapter 63 of the Social Security Act, as amended . . . shall be construed to render such dwelling unit

---

[5] State statutes include General Statutes § 8-219e (financial assistance for removal of lead-based paint), § 17-585 (lead-based paint inspection of family day-care centers), §§ 19a-111a through 19a-111d (lead poisoning prevention program), § 21a-82 (use of nonconforming lead-based paint in tenements and municipally owned buildings prohibited), § 21a-83 (restrictions on the packaging and sale of nonconforming lead-based paint), § 21a-85 (penalties for failure to comply with §§ 21a-82 and 21a-83), and § 47a-8. The primary compilation of regulations is found at § 19a-111-1 et seq. of the Regulations of Connecticut State Agencies.

. . . unfit for human habitation and shall constitute a noncompliance with subdivision (2) of subsection (a) of section 47a-7." A violation of § 47a-8, therefore, constitutes a per se violation of § 47a-7 (a) (2).

To ensure that the landlord's duties are performed, General Statutes § 47a-4a provides that "[a] rental agreement shall not permit the receipt of rent for any period during which the landlord has failed to comply with subsection (a) of section 47a-7." Generally, a tenant claiming the right to withhold rent must "show that the landlord's failure to comply with § 47a-7 (a) materially affects his safety . . . or has rendered the premises uninhabitable." (Citation omitted; internal quotation marks omitted.) *Visco* v. *Cody,* 16 Conn. App. 444, 450, 547 A.2d 935 (1988). The legislature, however, in its enactment of § 47a-8, has removed that burden from the tenant where lead-based paint is involved. The legislature has determined that the mere presence of lead-based paint *shall* be construed to render the dwelling unit uninhabitable and *shall* constitute noncompliance with § 47a-7 (a) (2). Consequently, there is nothing to forestall the triggering of the sanction imposed by § 47a-4a.

In the present case, the parties agree that the lead content of the paint on the exterior of the apartment at the time of nonpayment of rent in April, 1988, exceeded the standard referenced in § 47a-8. Accordingly, by virtue of the unambiguous language of the statutes, the plaintiff was not in compliance with § 47a-7 (a) (2) in April and, as a result, pursuant to § 47a-4a, the receipt of rent for that month was prohibited.

Notwithstanding the plain language of the statutes, however, the plaintiff suggests that the statutory scheme impliedly provides for either a grace period in which to cure the problem or, at least, a notice require-

ment before the right to withhold rent arises.[6] There is no indication that the legislature intended anything other than what it has expressed in the clear statutory language. In the absence of any ambiguity, we construe the intent of the legislature by what it said, not by what it may have meant to say. *Furstein* v. *Hill,* 218 Conn. 610, 622, 590 A.2d 939 (1991). We need look no further than the statutory language. *Elections Review Committee of the Eighth Utilities District* v. *Freedom of Information Commission,* 219 Conn. 685, 692, 595 A.2d 313 (1991). Moreover, in light of the significant health hazards posed by lead-based paint, the result compelled by the language of these statutes is neither absurd nor irrational. See *Turner* v. *Turner,* 219 Conn. 703, 712–13, 595 A.2d 297 (1991). Accordingly, we decline to impose a notice provision on this unambiguous statutory scheme.

Furthermore, if the legislature intended to include a notice provision, it was capable of doing so. For example, General Statutes § 47a-13, which was enacted as part of a public act[7] that also significantly revised § 47a-8, specifically established such a provision. In addressing the tenant's remedies when a landlord has failed to supply essential services, General Statutes § 47a-13 (c) provides that the "[r]ights of the tenant under this section do not arise (1) until the tenant has given reasonable

---

[6] The plaintiff does not argue that it had no notice that the presence of lead-based paint was not permitted on the premises. Nonconforming lead-based paint has been prohibited on rental dwelling units in this state for many years under General Statutes § 47a-8. Section 47a-8 has its origins in General Statutes § 47-24, enacted in 1958. It was first substantially revised by No. 194, § 4, of the 1971 Public Acts, the act being entitled "An Act to Enforce the Elimination of Lead-based Paint in Housing Accommodations." By 1976, it had nearly assumed its present language which, ultimately, was provided by No. 79-571 of the 1979 Public Acts.

[7] Public Acts 1976, No. 76-95, § 13. Section 20 of the same act amended General Statutes § 47a-8 by, inter alia, adding the language "and shall constitute a noncompliance with subdivision (2) of subsection (a) of section 47a-7."

written or oral notice to the landlord or (2) if the condition was caused by the wilful or negligent act or omission of the tenant, a member of his family or other person on the premises with his consent." No similar language accompanies § 47a-8.

Because it is presumed that the legislature acts with knowledge of existing statutes and intends to create one consistent body of law; *Kinney* v. *State,* 213 Conn. 54, 65, 566 A.2d 670 (1989); it is not our role to engraft the language of one statute onto another, particularly where, as here, the statutes are similar and were under consideration by the legislature at the same time. See *Caron* v. *Inland Wetlands & Watercourses Commission,* 222 Conn. 269, 277, 610 A.2d 584 (1992); *Doe* v. *Manson,* 183 Conn. 183, 187–88, 438 A.2d 859 (1981).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] Public Acts 1976, No. 76-95, § 13. Section 20 of the same act amended General Statutes § 47a-8 by, inter alia, adding the language "and shall constitute a noncompliance with subdivision (2) of subsection (a) of section 47a-7."