THOMAS GORE ET AL. *v.* PEOPLE'S
SAVINGS BANK ET AL.
(12203)

FREEDMAN, SCHALLER and SPEAR, Js.

Argued February 15—decision released July 12, 1994

*Dana P. Lonergan,* for the appellants (plaintiffs).

*Peter J. Dauk,* with whom was *Lawrence F. Reilly,* for the appellees (defendants).

SCHALLER, J. The plaintiffs, Thomas Gore, Wanda Copeland and their minor child, Kendall Copeland,[1] appeal from the judgment of the trial court, rendered after a jury verdict, in favor of the defendants, People's Savings Bank (People's) and M.S.B. Real Estate Corporation (M.S.B.), on two counts of negligence. The plaintiffs' amended complaint contained six counts. The first count, as to People's, and the third count, as to M.S.B., alleged negligence. The second count, as to People's, and the fourth count, as to M.S.B., alleged that the defendants had breached the lease agreement. The fifth count, as to People's, and the sixth count, as to M.S.B., alleged strict liability. The trial court granted the defendants' motions for directed verdict as to the fifth and sixth counts, from which the plaintiffs took an exception and filed a motion to set aside the verdict. The trial court denied the motion to set aside.[2]

The dispositive issues on appeal are whether the trial court improperly (1) refused to instruct the jury that,

---

[1] Gore and Wanda Copeland brought this case on behalf of their son as next friends, and on their own behalfs as tenants of the named defendant and for medical expenditures.

[2] The trial court refused to charge the jury with regard to negligence per se as to General Statutes §§ 47a-7, 47a-8, 47a-54 and 47a-55, and § 19-13-B1 (i) of the Regulations of Connecticut State Agencies. The court, in instructing the jury on simple negligence, did note that a violation of § 47a-8 renders an apartment uninhabitable. The court also instructed, how-

if it found the defendants in violation of General Statutes §§ 47a-7, 47a-8 or 47a-54f,[3] the defendants were negligent per se, and (2) directed a verdict in favor of the defendants on the counts alleging strict liability based on a violation of §§ 47a-7, 47a-8 or 47a-54f.[4] We conclude that the trial court improperly directed a ver-

ever, that, in order to impose tort liability, the landlord had to have actual or constructive notice of such defect.

We note that the plaintiffs did not allege a violation of § 47a-55 in their amended complaint, nor in their motion to set aside the verdict. We do not review the claim that the trial court improperly refused to instruct on this statute, when the claim is raised for the first time on appeal. *Rydingsword* v. *Liberty Mutual Ins. Co.*, 224 Conn. 8, 9–10 n.1, 615 A.2d 1032 (1992); *Cahill* v. *Board of Education*, 187 Conn. 94, 99–100, 444 A.2d 907 (1982). The plaintiffs did not appeal from the portion of the judgment concerning the second and fourth counts.

[3] General Statutes § 47a-8 provides: "The presence of paint which does not conform to federal standards as required in accordance with the Lead-Based Paint Poisoning Prevention Act, Chapter 63 of the Social Security Act, as amended, or of cracked, chipped, blistered, flaking, loose or peeling paint which constitutes a health hazard on accessible surfaces in any dwelling unit, tenement or any real property intended for human habitation shall be construed to render such dwelling unit, tenement or real property unfit for human habitation and shall constitute a noncompliance with subdivision (2) of subsection (a) of section 47a-7."

General Statutes § 47a-7 (a) provides in part: "A landlord shall . . . (2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition, except where the premises are intentionally rendered unfit or uninhabitable by the tenant, a member of his family or other person on the premises with his consent, in which case such duty shall be the responsibility of the tenant . . . ."

General Statutes § 47a-54f (b) provides: "Paint on the accessible surfaces of a tenement house shall not be cracked, chipped, blistered, flaking, loose, or peeling so as to constitute a health hazard."

[4] The plaintiffs also raise the following issues on appeal: whether the trial court improperly (1) instructed the jury that the plaintiffs had the burden of proof with respect to actual or constructive notice of the violation of the statute concerning lead paint, (2) instructed the jury that the defendants were entitled to a reasonable time after notice to make the necessary repairs pursuant to General Statutes § 47a-7 (2), and (3) refused to allow the plaintiffs to question a witness regarding the presence of lead-based paint in other apartments owned by the defendants. Because we conclude that the trial court improperly directed a verdict with regard to the counts on

dict in favor of the defendants on the strict liability counts, and remand this case for a new trial.

The jury reasonably could have found the following facts. In 1984, Kendall and his parents moved into an apartment in Bridgeport owned by the defendants. Kendall ingested chips of paint in the apartment, and, in 1985, was diagnosed as having a high level of lead in his blood. Upon notification of Kendall's medical status, Audrey Gains, an official from Bridgeport's lead poisoning prevention program, conducted tests at the apartment utilizing a lead-paint analyzer. In the living room of the apartment, where chips of paint were found on a window sill, the analyzer indicated a measurement of 8.3 milligrams of lead per square centimeter. Gains subsequently notified the defendants of the results of the tests.

The plaintiffs assert that the trial court improperly directed a verdict as to the counts sounding in strict liability. " 'The standard of review of directed verdicts is well settled. A directed verdict is justified if on the evidence the jury could not reasonably and legally have reached any other conclusion. *Petyan* v. *Ellis,* 200 Conn. 243, 244, 510 A.2d 1337 (1986); *Golembeski* v. *Metichewan Grange No. 190,* 20 Conn. App. 699, 701, 569 A.2d 1157 (1990).' *Merola* v. *Burns,* 21 Conn. App. 633, 636, 575 A.2d 1025 (1990). In reviewing the trial court's action in directing a verdict for [the defendants], we must consider the evidence in the light most favorable to the plaintiff[s]. *Petyan* v. *Ellis,* supra [244];

strict liability and remand this case to the trial court, we need not address these other claims, as they are not likely to occur upon retrial.

The plaintiffs also claim that the trial court improperly refused to instruct the jury on the theory of nuisance. We note that the issue of public nuisance was thrust into the complaint only to the extent that proof of a public nuisance pursuant to § 19-13-B1 (i) of the Regulations of Connecticut State Agencies could constitute negligence per se or strict liability. We, therefore, address the issue of the trial court's failure to instruct on public nuisance in the context of the issues of negligence per se and strict liability. See footnote 8.

*Merola* v. *Burns,* supra [636]." *Berry* v. *Loiseau,* 223 Conn. 786, 819–20, 614 A.2d 414 (1992).

In order to address the plaintiffs' issues concerning the directed verdict as to the strict liability counts, we must first distinguish the plaintiffs' claims of negligence per se. The parties intimate that these two causes of action are virtually identical. Both actions are grounded in claims that the defendants violated (1) General Statutes §§ 47a-8 and 47a-7, which together provide that the presence of paint containing lead in excess of certain federally prescribed standards or of certain flaking or peeling paint that constitutes a health hazard renders certain rental premises uninhabitable,[5] and (2) General Statutes § 47a-54f, which proscribes certain flaking or peeling paint that constitutes a health hazard.

"The doctrine of negligence per se serves to superimpose a legislatively prescribed standard of care on the general standard of care. *Wendland* v. *Ridgefield Construction Services, Inc.,* 184 Conn. 173, 178, 439 A.2d 954 (1981)." *Staudinger* v. *Barrett,* 208 Conn. 94, 101, 544 A.2d 164 (1988). " 'Where a statute is designed to protect persons against injury, one who has, as a result of its violation, suffered such an injury as the statute was intended to guard against has a good ground of recovery.' *Knybel* v. *Cramer,* 129 Conn. 439, 443, 29 A.2d 576 [1942]; *Coughlin* v. *Peters,* 153 Conn. 99, 102, 214 A.2d 127 [1965]. That principle of the law sets forth two conditions which must coexist before statutory negligence can be actionable. First, the plaintiff must be within the class of persons protected by the statute. [*Coughlin* v. *Peters,* supra, 101]; *Hassett* v. *Palmer,* 126 Conn. 468, 473, 12 A.2d 646 [1940]; *Monroe* v. *Hartford Street Ry. Co.,* 76 Conn. 201, 207, 56 A. 498

---

[5] Our discussion of General Statutes § 47a-7 is limited to the specific interaction between General Statutes §§ 47a-8 and 47a-7. Our subsequent discussion, therefore, will focus on § 47a-8. Proof of a violation of § 47a-8 is a per se violation of § 47a-7. See footnote 3.

[1903]. Second, the injury must be of the type which the statute was intended to prevent. *Toomey* v. *Danaher,* 161 Conn. 204, 212, 286 A.2d 293 [1971]; *Longstean* v. *McCaffrey's Sons,* 95 Conn. 486, 493, 111 A. 788 [1920]. See Prosser, Torts (4th Ed.) § 36; Restatement (Second), 2 Torts §§ 286, 288." *Wright* v. *Brown,* 167 Conn. 464, 468–69, 356 A.2d 176 (1975).

Pursuant to § 288A of the Restatement (Second) of Torts, a defendant can rebut an allegation of negligence per se through proof of an excuse for the violation. Section 288A provides that, unless the statute is construed not to permit an excuse, the violation of such a statute *"is excused* when (a) the violation is reasonable because of the actor's incapacity; (b) he neither knows nor should know of the occasion for compliance; (c) he is unable after reasonable diligence or care to comply; (d) he is confronted by an emergency not due to his own misconduct; [and] (e) compliance would involve a greater risk of harm to the actor or to others." (Emphasis added.) In the case of strict liability, however, the defendant is liable without fault upon proof of the violation of the statute and proximate causation. When an excuse is not permitted under the construction of the applicable statute, strict liability exists.[6]

We note that the distinctions between statutory negligence per se and strict liability have rarely been explored by our courts. In *Vingiano* v. *Frisco,* Superior Court, judicial district of New Haven, Docket No. 240142 (June 23, 1986), Judge (now Justice) Berdon discussed the differences between negligence per se and strict liability. *Vingiano* concerned the nature of civil liability pursuant to General Statutes (Rev. to 1983) § 14-80 (a), which required that "service and parking

---

[6] Although courts may continue to refer to the imposition of liability upon the violation of a statute where no excuse is permitted as negligence per se, "[s]uch a statute falls properly under the head[ing] of strict liability . . . ." W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 36, p. 227.

brake systems . . . shall be maintained at all times in good working order." Judge Berdon commented that the key difference between the imposition of negligence per se and strict liability concerned the fact that § 288A of the Restatement (Second) of Torts provided excuses for violations of statutes under the doctrine of negligence per se, while there is no provision for excuses under the doctrine of strict liability. Judge Berdon noted that our courts have often confused the terms strict liability and negligence per se.[7] Judge Berdon then concluded that the legislature did not intend that excuses be permitted for violation of § 14-80 (a), that § 14-80 (a) imposed strict liability and that the second element of strict liability, namely proximate causation, had been met. *Vingiano* v. *Frisco,* supra.

In assessing whether the violation of § 47a-8 or § 47a-54f can provide for civil liability pursuant to a negligence per se theory, we must determine whether the legislature, in adopting the statute, anticipated the plaintiff to be a member of the protected class and intended to prevent the harm that resulted. "To determine the collectively expressed legislative intent, we look first to the language of the statute itself. If that language is plain and unambiguous, we go no further. *University of Connecticut* v. *Freedom of Information Commission,* 217 Conn. 322, 328, 585 A.2d 690 (1991). If, however, the statute is ambiguous, e.g., either opaque or susceptible to alternative conflicting interpretations, we will seek guidance from 'extrinsic aids,' e.g., the legislative history. *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 200 Conn. 630, 637–38, 513 A.2d 52 (1986); *State* v. *Ellis,* 197 Conn. 436, 445, 497 A.2d 974 (1985)."

---

[7] Judge Berdon distinguished the terms when he stated that "[i]t is clear that the defendant violated [General Statutes] § 14-80 (a) by operating a vehicle with defective brakes and as a result he was negligent per se (or more properly designated as having violated the first of two elements necessary to impose strict tort liability)." *Vingiano* v. *Frisco,* supra.

*Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 187, 592 A.2d 912 (1991).

Section 47a-8 provides the following two ways in which the paint may render premises uninhabitable: (1) the paint does not conform to certain standards concerning the content of lead set forth in the federal Lead-Based Poisoning Prevention Act; or (2) the paint is cracked, chipped, blistered, flaking, loose or peeling and constitutes a health hazard. The purpose of the portion of the statute prescribing the amount of lead in paint that can be used in a premises pursuant to certain federal statutes is unambiguous. The plaintiff, who was a minor resident of a rental premises, is a member of the class of persons intended to be protected by the statute. The reference to the federal statute designed to curb lead-based paint poisoning clearly renders the alleged injury suffered, lead-based paint poisoning, as the type of injury that the legislature intended to curb. See *Torres* v. *Melody,* Superior Court, judicial district of Norwich, Docket No. CV910098765 (February 13, 1992) (concluding that § 47a-8 covered members of the class that included a minor child living at rented premises, and that § 47a-8 addressed injuries incurred through exposure to toxic lead-based paint).[8]

The portion of § 47a-8 that prohibits certain peeling or flaking paint that constitutes a health hazard can be analyzed with § 47a-54f, which likewise prohibits

[8] We also note that in the count of their complaint alleging negligence per se and strict liability, the plaintiffs cited to § 19-13-B1 (i) of the Regulations of Connecticut State Agencies. Section 19-13-B1 provides in pertinent part: "The following conditions are specifically declared to constitute public nuisances . . . (i) Buildings or any part thereof which are in a *dilapidated* or *filthy* condition which may endanger the life or health of persons living in the vicinity." (Emphasis added.) We conclude that the regulation, in discussing dilapidated and filthy buildings, does not contemplate the specific harm of lead-based paint poisoning to a minor child. As a result, a violation of this statute could not constitute negligence per se in this context.

cracked, chipped, blistered, flaking, loose, or peeling paint that constitutes a health hazard. What the legislature intended to encompass in these statutes through its references to "health hazard" is ambiguous. As a result, we must examine the legislative history to determine what type of harm was intended to be prevented. Both statutes arose from Public Acts 1971, No. 71-194, entitled "An Act to Enforce the Elimination of Lead-Based Paint in Housing Accommodations," and the legislative history reflects that a clear purpose of the act was to end the health problems arising specifically from the presence of lead-based paint. 14 H.R. Proc., Pt. 4, 1971 Sess., pp. 1766–69; 14 S. Proc., Pt. 4, 1971 Sess., p. 1533.

Upon our conclusion that the initial criteria for the imposition of civil liability pursuant to a negligence per se theory have been met, we must now examine whether the violation of §§ 47a-8 and 47a-54f impose negligence per se or more properly strict liability. The defendants contend that they had to be notified of the lead-based paint defect in order for civil liability to enter. The defendants cite to numerous cases where a landlord's liability for a defect in the premises has been predicated upon a finding of notice. These cases are distinguishable from the present case in that they did not involve the violation of a statute specific to the defect alleged, but rather, were clearly predicated upon common law negligence principles.[9] In enacting §§ 47a-8 and 47a-54f, the legislature has already acknowledged that the presence of a certain amount of lead in paint or the presence of peeling or flaking paint which constitutes a health hazard is a defect, and

[9] We note, however, the existence of *Iudica* v. *DeNezzo*, 115 Conn. 233, 237–38, 161 A. 81 (1932) (proof of negligence based on violation of statute, now General Statutes § 47a-54d [b]), that requires a landlord to provide lighting in certain areas demands proof of notice of landlord of lack of lighting.

that a landlord has a duty to remedy a situation where such a defect exists. In essence, the defendants posit that the alleged violations of §§ 47a-8 and 47a-54f should be excused, because they neither knew nor should have known of the occasion for compliance with the statutes.

We have previously construed § 47a-8 as not requiring notice to the landlord of the lead-based paint hazard in order to trigger a viable defense, pursuant to General Statutes § 47a-4a,[10] to a landlord's summary process action for nonpayment of rent. *Housing Authority* v. *Olesen,* 31 Conn. App. 359, 363–65, 624 A.2d 920 (1993). After examining the statute, reviewing its purpose, and commenting on the significant health hazards posed by lead-based paint, we declined in *Olesen* "to impose a notice provision on this unambiguous statutory scheme." Id., 364. Although we have not previously addressed § 47a-54f, we conclude that the same analysis applies.

The interpretation offered by the defendants would not fulfill the purpose of the statutes, namely, to curb the evils resulting from lead-based paint. In many cases, a landlord would not be notified of the danger until a child has already ingested the paint, become ill, and undergone medical tests, the results of which indicate an abnormal presence of lead in the body. There is no indication that the legislature intended that §§ 47a-8 and 47a-54f be construed in a manner that would allow the potential harms caused by the presence of lead-based paint to proliferate. Similarly, there is no suggestion that the legislature intended that the violation of the statutes be excused for lack of notice to the landlord, or for any other reason presented in § 288A of the Restatement (Second) of Torts. Because we con-

---

[10] General Statutes § 47a-4a provides: "A rental agreement shall not permit the receipt of rent for any period during which the landlord has failed to comply with subsection (a) of section 47a-7."

strue the statute as meeting the threshold dual criteria for imposition of statutory civil liability pursuant to negligence per se, but lacking any provision for an excuse for the violation, we conclude that the legislature intended that the statute provide for strict liability upon proof of a violation of the statute and proximate causation.

We note that the imposition of strict liability in the area of lead-based paint poisoning is not novel.[11] In Massachusetts, for example, the legislature has provided for the strict liability of the owner of the premises who violates a statute that requires him to remove or cover paint in order to make it inaccessible to children under six years of age. Mass. Gen. L., c. 111 §§ 197, 199 (1985); see *Bencosme* v. *Kokoras,* 400 Mass. 40, 748 N.E.2d 748 (1987). If the landlord fails to address the lead-based paint hazard after notification of the danger, he is subject to treble damages. Mass. Gen. L., c. 111 § 199 (1985). Although our statutes concerning lead-based paint are not as specific as that of Massachusetts, our legislature has recognized the health hazard that lead-based paint presents through the enactment of §§ 47a-8 and 47a-54f. Consistent with our previous construction of § 47a-8 in the context of a summary process action as not requiring notice to the landlord of the lead-based paint defect, we conclude that the legislature did not require notice to the landlord prior to the imposition of civil damages pursuant to a theory of strict liability. We also conclude that the legislature, in enacting § 47a-54f, with language vir-

---

[11] In the Superior Court case of *Hardy* v. *Griffin,* 41 Conn. Sup. 283, 569 A.2d 49 (1989), the court rendered judgment in favor of the minor plaintiff under a theory of strict liability brought pursuant to §§ 47a-7 and 47a-8 and a local ordinance. The court determined that the defendants were liable on the basis of their breach of the local ordinance. We note, however, that the trial court did not address the issue of strict liability based on a violation of §§ 47a-7 and 47a-8 from the viewpoint that we have discussed previously, and our analysis is independent of that set forth in *Hardy.*

tually identical to that of § 47a-8, likewise, did not require notice to a landlord prior to the imposition of civil damages pursuant to a theory of strict liability.

Having determined that §§ 47a-7 and 47a-8, when read together, and § 47a-54f provide for civil damages pursuant to a claim of strict liability, we must now determine whether the trial court properly directed verdicts in favor of the defendants on the counts sounding in strict liability. The question is whether, on the facts presented, the jury could have legally and logically reached a different conclusion, namely that the defendants were strictly liable. We must determine whether the jury reasonably and logically could have found a statutory violation, proximate causation and damages.

" '[I]f the evidence presented is in conflict and more than one conclusion is reasonably open to the jury . . . and if the jury may reasonably draw different inferences from the evidence, or if the jury could be called to pass upon the credibility of witnesses or their testimony, a verdict should not be directed by the court.' *Johnson* v. *Flammia,* 169 Conn. 491, 496, 363 A.2d 1048 (1975)." *Marron & Sipe Building & Contracting Corp.* v. *Flor,* 22 Conn. App. 689, 699, 580 A.2d 508 (1990). This case was vigorously contested at the trial court and involved the presentation of numerous witnesses and conflicting evidence with regard to the violation of the relevant statutes, proximate causation and damages. We conclude, on the basis of the evidence presented, that the jury reasonably could have arrived at more than one verdict, and, as a result, the verdict should not have been directed.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.