[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff brought this summary process action to recover possession of the premises occupied by the defendant based on nonpayment of rent on September 27, 1998[1]. The defendant's answer admitted each paragraph of the complaint but contained a special defense claiming that no rent was due under General Statutes section 47a-4a because of various health and housing code violations in violation of § 47a-7 (a). Since the defendant has admitted all the allegations of the complaint, the only issue for the court to decide is whether she can prevail on this special defense, on which she has the burden of proof.Evergreen Corporation v. Brown, 35 Conn. Sup. 549, 552,396 A.2d 146 (App. Sess. 1978) The court finds the issues in favor of the plaintiff.
Certain facts and procedural matters are relevant to the decision of this matter. On or about June 27, 1998. the defendant signed a one-year written lease for a tenancy beginning that day at an apartment owned by the plaintiff landlord in Harwinton with monthly rental payments of $500, plus an additional $10 each CT Page 6977 month toward the security deposit. She paid $1,000 (that for the first and last months' rent.[2] The lease did not specify what day of the month rent was due. Although the defendant did make three additional payments totaling $730 between June 27 and the end of October, and at least $510 of that amount was, according to the evidence offered by both parties, actually paid in September, the pleadings and evidence establish that defendant did not pay the full rent due on September 27, 1998.[3]
The defendant has failed to sustain her burden of proof to establish that no rent was due under General Statutes section47a-4a because of health or housing code violations.[4] Under § 47a 4a, "[a] rental agreement shall not permit the receipt of rent for any period during which the landlord has failed to comply with subsection (a) of section 47a-7." Section 47a-7 (a) of the General Statutes sets forth the responsibilities of a landlord to his tenants.[5] As well as complying with all applicable building and housing codes of the state or any political subdivision thereof, a landlord is mandated to "make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." General Statutes § 47a-7 (a)(2). The remedies available to a tenant in the event of the landlord's dereliction of these statutory duties are various: the tenant may withhold his rental payment, §47a-4a; initiate an action to compel the landlord to perform his legal duties, § 47a-14h; or interpose the landlord's noncompliance as a defense in a summary process action, §§47a-20 and 47a-33.
Section 47a-4a, as interpreted by our courts, does not justify nonpayment for minor housing problems or cosmetic or aesthetic deficiencies in the premises. "Generally, a tenant claiming the right to withhold rent must "show that the landlord's failure to comply with 47a-7 (a) materially affects his safety . . . or has rendered the premises uninhabitable." (Citation omitted; internal quotation marks omitted.) Housing Authority v. Olesen,31 Conn. App. 359, 363, 624 A.2d 920 (1993). Similarly, for a tenant to make a successful claim that she has the right to withhold payment of rent, she must show that the landlord's failure to comply with 47a-7 (a) "materially affects [her] safety"; Tuckerv. Lopez, 38 Conn. Sup. 67, 69, 457 A.2d 666 (1982); or has rendered the premises "uninhabitable." Steinegger v. Rosario,35 Conn. Sup. 151, 156, 402 A.2d 1 (1979).
 The defects must materially and substantially affect the CT Page 6978 tenants' use of the premises. It is not enough for the tenant to show that the premises are not in full code compliance. . . . The requested repair involved must be "one necessary to put and keep the premises in a fit and habitable condition. . . . If minor repairs were sufficient to trigger the statutory defenses of unfit and uninhabitable what was intended as a shield for the benefit of tenants would be metamorphosed into a sword to deprive landlords of their property. . . . Mere technical or cosmetic violation of governmental codes are not sufficient to rise to the level of the defense of unfit and uninhabitable.
(Internal citations omitted.) Bonaiuto v. Vitola, No. SPNH 9801-53617 (Feb. 20, 1998).
In other words, the law requires serious and substantial violations affecting safety or wellbeing. Mere noncompliance with promises by a landlord to make certain repairs or to provide a rental unit with certain features does not make the unit uninhabitable. A tenant must seek different remedies than nonpayment for such violations of a landlord's promises or obligations.
In this case, the defendant offered evidence of various problems with her apartment. Except for the lack of a smoke detector, none of these, either by themselves or taken as a whole, would be sufficient noncompliance with the landlord's responsibilities to justify nonpayment of rent. For the reasons stated below, the court finds that the evidence as to each of these is insufficient to sustain the defendant's burden of proof.
The four major problems claimed by the defendant were absence of a smoke detector, a broken deck bannister, insufficient hot water, and partial heat:
Smoke detector. While absence of a smoke detector would excuse nonpayment of rent, the evidence as to the lack of a smoke detector here is decidedly mixed. The defendant testified that there was no smoke detector when she initially viewed the unit two days before she moved in; that the landlord's representative, Ruth Larson, who showed the apartment to the defendant, acknowledged its absence and promised to install one before occupancy; and that the landlord failed to do so until January. By the time of trial, Ms. Larson no longer worked for the plaintiff. When the defendant called her to testify, Ms. Larson CT Page 6979 denied that a smoke detector had not been in the unit at the beginning of the tenancy, denied promising that one would be installed, and in fact testified that the unit had a smoke detector when the defendant moved in. The landlord's witness, Mr. Joseph Dzuirgot, a vice-president of the plaintiff corporation, testified that the first time the landlord was informed about a missing smoke detector was when defendant so informed him in January and that he immediately installed one. He also testified that when he installed the smoke detector, a bracket for the smoke detector was present although the smoke detector itself was not missing, "a natural inference from this testimony being that a smoke detector had once been in the premises but had somehow been removed. The defendant acknowledges that she told Mr. Dzuirgot in January that she had no smoke detector and that he then promptly installed "a very good smoke detector."
The cases interpreting § 47a-4a require more than a tenant's word that there is a serious health or safety hazard such as lack of a smoke detector — such as a fire marshal's report, an independent witness, or some corroboration. "[T]o establish uninhabitability, the tenant needs to do more than assert a unilateral, self-serving statement that the premises are untenantable. Evergreen Corporation v. Brown, 35 Conn. Sup. 549,552, 396 A.2d 146 (1978) (suggesting that a tenant "utilize the broad range of municipal boards, agencies, and commissions' to remedy defects)." Visco v. Cody, 16 Conn. App. 444, 450. There is no such evidence here, however. In contrast, for example, the tenant offered into evidence several letters she wrote to the landlord this spring complaining about the hot water heater, but offered no documentary or independent evidence that she had complained to the landlord or anyone else from August through December about a missing smoke detector. In view of the conflicting testimony and the lack of any independent corroborating evidence, the court therefore finds that the tenant has not met her burden of proving that it was more likely than not that there was no smoke detector in September and October 1998.
Broken deck bannister. There is significant evidence that the court credits that during divers times throughout the tenancy a section of the upper railing of a bannister on an outside deck accessed from the apartment by a sliding door was broken.[6]
The defendant, Trooper Edward Peshka of the Connecticut State Police, and Torrington Health Inspector Gilbert Roberts all testified that the rail was broken. There has also been testimony CT Page 6980 from the defendant, which the court credits, that this deck is approximately 2-3 feet above ground level at one point, but that the ground slopes downward and that the deck is somewhat higher above the ground than that at the other end of the deck — while the defendant testifies that this other end of the deck is perhaps 13 feet above the ground, there is no other testimony as to its height. The court accepts that it is some height greater than 2-3 feet. The court thus finds that the defendant met her burden of establishing that this bannister rail on the back deck was broken at the relevant times for this action. This broken bannister is not on an exit stairway that an occupant might have to use for exit from the premises in the event of fire or other emergency inside the unit. The court does not believe that the broken bannister rail is such a grave safety violation as to make the unit uninhabitable or defeat the tenant's obligation to pay rent.
Broken water heater. A landlord has the obligation to provide heat and hot water both by law and by this lease. Failure to provide either would justify nonpayment of rent under §47a-4a. There is convincing evidence that the water heater here does not operate to the tenant's satisfaction. The defendant testified that a functioning water heater was important to her and the court accepts that testimony. Based on the defendant's testimony and that of the Torrington health inspector, the tenant has established by a preponderance of the evidence that she presently has enough hot water for only ten minutes of running hot water from her faucet into a kitchen sink, approximately 25 gallons worth — although only enough hot water perhaps to fill half a bath tub because the faster rate of flow of water from a bath tub faucet would allow the water heater less time to provide more newly heated water. While this water heater may not have functioned to the tenant's satisfaction, this case does not present a complete failure to provide hot water as to eliminate the tenant's duty to pay rent.
Furthermore, there is also evidence here, from the defendant herself, that the water heater functioned adequately until December. She testified that it initially broke at the end of August, when she noticed that she had very little hot water. She received the landlord's permission to call a plumber, who made the necessary repairs and it then worked to her satisfaction until December. Thus, during the relevant period in question, September and October 1998, the defendant's own testimony establishes, and the court so finds, that the water heater was CT Page 6981 not broken.
Lack of heat. A landlord's failure to provide heat required under a lease would also excuse a tenant from paying rent. "`A lack of heat during the winter season or during any season when the temperature falls below the statutory or regulatory limits is a violation of the health code . . . and constitutes a factor that materially affects the health and safety."'). Gayle v. Young, Superior Court, Judicial District of Fairfield, Housing Session, SPBR 9409-27973 (Feb. 6, 1995) There is no dispute here that the lease here required the landlord to provide heat. The defendant testified that from July first through January 24, she had no heat in certain parts of her apartment; that on January 24th" she first told the landlord about the lack of heat; and that on that very same day he came out to the apartment and repaired the problem:
 He went into the basement, found the circuit breaker and turned it on [T]hey had never worked since I moved in, so I just thought they were broken. But he said no, no, they're not broken, it was just a circuit breaker. So I lived there the whole winter until January 24th with no heat, thinking they were broken and all he had to do was flip a switch.
Since the landlord made the repairs needed to provide full heat as soon as notified, and since the defendant always had at least partial heat, she has not sustained her burden of showing a lack of heat in violation of § 47a-7 (a) that would have excused her from paying rent.
None of the other problems alleged by the defendant — no globe for a kitchen light fixture, dirty used blinds for a sliding door, a hole in a wall, or a cockroach she found in the apartment — rise to the level of such serious health or safety issue as to excuse nonpayment of rent.
Since the defendant has offered the special defense, she has the burden of proving her claim by a preponderance of the evidence. The court finds that the defendant has not sustained her burden of proof on the special defense and enters judgment of possession for the plaintiff
Stephen F. Frazzini, Judge