## MARK BRAY *v.* JOYCE BRAY

Superior Court, Judicial District of Tolland

File No. CV-08-4008904-S

Memorandum filed August 27, 2008

*Devlin, Peters & Tarpey, LLC*, for the plaintiff.

*Joyce Bray*, pro se, the defendant.

A. SANTOS, J. The plaintiff, Mark Bray, filed this summary process action against his tenant and former spouse, Joyce Bray, now known as Joyce Green, on March 11, 2008. In his complaint, the plaintiff alleges that pursuant to a residential lease incorporated into a divorce agreement between the parties, the defendant has failed to pay fully the monthly rent due for the months of August, October and December, 2007. The plaintiff served a notice to quit the premises on the defendant on December 15, 2007. The defendant filed an answer to the complaint on March 7, 2008, in which she alleged the special defense that all rent owed to the plaintiff had been paid and that no rent was due for the deficiency claimed because it was used to remedy health code violations cited by the department of public health.

The matter came before the court for a trial on June 13, 2008. The plaintiff was represented by counsel; the defendant appeared pro se. Testimony was heard from both parties, along with the marshal who served the notice to quit, Gregory Woodruff, and an employee of Rockville Bank, Michelle Fasolo. The parties submitted various exhibits, including their divorce agreement, copies of checks, copies of e-mails between them and copies of the inspection report issued by the department of public health.

I

## FINDINGS OF FACTS

The court finds the following facts. The parties were married on August 27, 1994, but divorced on July 17, 2007, pursuant to a separation agreement. That agreement provided, inter alia, that (1) the plaintiff was to retain sole ownership of their property at 527 Main Street, Somers, (2) the plaintiff was to pay the defendant alimony at the rate of $200 per week, or $860 per month, for a period of seventy-eight months from the date of judgment, and (3) that the defendant was to reside at 527 Main Street in return for rental payments of $860 per month. The rental agreement was to "be considered a landlord tenant relationship and nothing in this agreement shall change the legal nature of that arrangement." The separation agreement also provided that "the parties shall be equally obligated to pay the amount due on [certain] credit cards." The plaintiff submitted a series of e-mails between the parties in which he proposed that his alimony payments begin on August 1, culminating in the defendant's agreement that "[w]e need to exchange checks and August 1 is fine."

The defendant operated a home day care business at 527 Main Street, which was her sole source of income. The plaintiff knew the defendant would be operating this business before entering the separation agreement.

On November 5, 2007, the defendant was cited by the department of public health for various violations of state regulations governing family day care homes, including having hazardous farm equipment located on the premises in violation of § 19a-87b-9 of the Regulations of Connecticut State Agencies.[1] The defendant hired her son and his friend to construct a fence to alleviate the problem, paying them $50 each and purchasing $21.18 in materials from The Home Depot. She had notified the plaintiff of the violation on the day of the inspection, but, according to her, he had not addressed the problem within the two weeks required by the citation.

The defendant has paid her rent fully each month due except for three. In August, 2007, she gave the plaintiff a check for $460. The defendant had deducted $400 from the full $860 payment, representing alimony payments she claimed the plaintiff owed but had not paid her for the two weeks immediately following the divorce judgment of July 17, 2007. In October, 2007, the defendant gave the plaintiff a check for $726.94, having deducted $133.06 from the full amount due because she believed the plaintiff, under the terms of the separation agreement, owed her that amount for the payment of a credit card balance. In December, 2007, the defendant gave the plaintiff a check for $738.82, having deducted

---

[1] It is not clear from the record exactly how the farm equipment violated § 19a-87b-9 of the Regulations of Connecticut State Agencies. Presumably, it violated the requirement therein that "[t]he facility and equipment shall be in good repair, and reasonably free from anything that would be dangerous to children. The Commissioner, upon inspection, may require the provider to correct any condition that may put children at risk of injury." Regs., Conn. State Agencies § 19a-87b-9 (b).

The defendant was also found to be in violation of §§ 19a-87b-6 (first aid certificate requirement), 19a-87b-7 (medical forms and tuberculosis tests for children in home) and other portions of 19a-87b-9 (unlocked pool gates, unsafe jungle gym, unsafe railings) of the Regulations of Connecticut State Agencies. All violations have since been remedied.

$121.18 from the monthly rent for the costs of remedying the safety hazard posed by the farm equipment on the property. The plaintiff accepted all these checks and applied them toward the rent due. After serving the notice to quit on December 15, 2007, however, he has held all the tendered rent checks but not cashed them.

The defendant testified that she assumed, when the plaintiff accepted her checks with reduced amounts, that he had acknowledged his responsibility for the amounts deducted and that no further payment was necessary. After summary process was initiated, the defendant offered to pay the plaintiff $654.24, representing the amount of rent claimed to be overdue.

Additional facts will be discussed as necessary.

II

DISCUSSION

General Statutes § 47a-23 (a) provides in relevant part: "When the owner or lessor, or the owner's or lessor's legal representative . . . desires to obtain possession or occupancy of any land or building . . . and (1) when a rental agreement or lease of such property, whether in writing or by parol, terminates for any of the following reasons . . . (D) nonpayment of rent within the grace period provided for residential property in section 47a-15a or 21-83 . . . such owner or lessor, or such owner's or lessor's legal representative . . . shall give notice to each lessee or occupant to quit possession or occupancy of such land, building, apartment or dwelling unit, at least three days before the termination of the rental agreement or lease, if any, or before the time specified in the notice for the lessee or occupant to quit possession or occupancy."

"Summary process is a special statutory procedure designed to provide an expeditious remedy. . . . It

enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms." (Citation omitted; internal quotation marks omitted.) *Young* v. *Young*, 249 Conn. 482, 487–88, 733 A.2d 835 (1999). "[Summary process] is preceded by giving the statutorily required notice to quit possession to the tenant. . . . Service of a notice to quit possession is typically a landlord's unequivocal act notifying the tenant of the termination of the lease. The lease is neither voided nor rescinded until the landlord performs this act and, upon service of a notice to quit possession, a [leasehold] is converted to a tenancy at sufferance." (Internal quotation marks omitted.) *Sproviero* v. *J.M. Scott Associates, Inc.*, 108 Conn. App. 454, 458 n.2, 948 A.2d 379 (2008). The standard of proof in summary process actions, a fair preponderance of the evidence, is "properly defined as the better evidence, the evidence having the greater weight, the more convincing force in your mind." (Internal quotation marks omitted.) *Cross* v. *Huttenlocher*, 185 Conn. 390, 394, 440 A.2d 952 (1981).

The defendant does not dispute that she failed to pay the full amount of rent for the months of August, October and December, 2007. Rather, she argues that she legitimately believed she was entitled to withhold rent on account of the plaintiff's failure to fulfill his obligations to her under the separation agreement. She also contends that pursuant to General Statutes §§ 47a-4a and 47a-7,[2] she was entitled to withhold rent in the

[2] General Statutes § 47a-4a provides: "A rental agreement shall not permit the receipt of rent for any period during which the landlord has failed to comply with subsection (a) of section 47a-7."

General Statutes § 47a-7 provides in relevant part: "(a) A landlord shall: (1) Comply with the requirements of chapter 368o and all applicable building and housing codes materially affecting health and safety of both the state or any political subdivision thereof; (2) make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition

amount that it cost to remedy the violation of the regulations governing day care homes embodied by the plaintiff's farm equipment. The plaintiff counters that the defendant was not so entitled and posits that such self-help remedies are disfavored at law.

The nonpayment of rent in full is a sufficient ground for eviction under our General Statutes. See General Statutes §§ 47a-15a and 47a-23. Therefore, absent any legitimate ground for withholding rent, the plaintiff is entitled to retake possession of the premises.

### A

### Plaintiff's Duties Under Separation Agreement[3]

The separation agreement provides that the rental agreement is to "be considered a landlord tenant relationship and nothing in this agreement shall change the

. . . (3) keep all common areas of the premises in a clean and safe condition . . . .

"(b) If any provision of any municipal ordinance, building code or fire code requires a greater duty of the landlord than is imposed under subsection (a) of this section, then such provision of such ordinance or code shall take precedence over the provision requiring such lesser duty in said subsection. . . ."

[3] The defendant, in her answer to the summary process complaint, does not address the August and October rental deficiencies. Although the plaintiff's notice to quit specifies only the failure to pay the December rent as a ground for eviction, the complaint raises the failure to pay rent for all three months as a ground.

The defendant has not challenged this discrepancy. Because the notice to quit is subject matter jurisdictional, however; *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 5, 931 A.2d 837 (2007); the court will address it briefly, sua sponte. See *Barry* v. *Historic District Commission*, 108 Conn. App. 682, 698, 950 A.2d 1 (2008). Although it is true that "[t]he complaint and the notice ought not to be at substantial variance with the summary process complaints"; (internal quotation marks omitted) *Housing Authority* v. *Rogers*, Superior Court, judicial district of Fairfield, Housing Session, Docket No. SP B.R. 9109-20758 (March 2, 1992) (*Leheny, J.*); a discrepancy fatal to the court's jurisdiction must be substantial, such as a notice to quit alleging a serious nuisance paired with a complaint alleging violations of unrelated sections of the lease agreement. Id. A general statement such as "nonpayment of rent" is typically sufficient to "[enable] a defendant to prepare a defense, to determine what stay may be available,

legal nature of that arrangement." The defendant has not cited anything in the rental agreement, or in any section of the General Statutes, that would permit the withholding of rent for the plaintiff's alleged failure to pay her alimony or his full share of their credit card bills. Therefore, the defendant was not entitled to withhold rent on this basis.

B

Plaintiff's Obligations Under General Statutes § 47a-7

The defendant next contends that the plaintiff breached his obligations under § 47a-7 by failing to remedy the hazard posed by farm equipment on the property. Thus, the defendant argues, pursuant to § 47a-4a, she was not obligated to pay rent for the amount it cost to remedy the violation herself.

"General Statutes § 47a-7 sets forth the responsibilities of a landlord to his tenants. As well as complying with all applicable building and housing codes of the state or any political subdivision thereof, a landlord is mandated to make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition. General Statutes § 47a-7 (a) (2). The remedies available to a tenant in the event of the landlord's dereliction of these statutory duties are various: the tenant may withhold his rental payment, § 47a-4a . . . or the tenant may interpose the landlord's noncompliance as a defense in a summary process action, [General Statutes] §§ 47a-20 and 47a-33.

"[F]or a tenant to make a successful claim that he had the right to withhold payment of rent, he must

and to ascertain what appeal procedure is appropriate." (Internal quotation marks omitted.) *Whiting Mills, LLC* v. *Van Inwagen*, Superior Court, judicial district of Litchfield, geographical area number eighteen, Docket No. CV-18 10669 (November 21, 2006) (*Marano, J.*) (reference to "nonpayment of rent" in notice to quit sufficient notice). Therefore, this court has jurisdiction over each of the plaintiff's claims.

show that the landlord's failure to comply with § 47a-7 (a) materially affects his safety . . . or has rendered the premises uninhabitable. . . .

"[T]he sanctions in [§§ 47a-7 and 47a-4a] are not triggered until and unless evidence is adduced at trial establishing that there is a substantial violation or series of violations of housing and health codes creating a material risk or hazard to the occupant . . . ." (Citations omitted; internal quotation marks omitted.) *Visco* v. *Cody*, 16 Conn. App. 444, 448–51, 547 A.2d 935 (1988); see also *Housing Authority* v. *Olesen*, 31 Conn. App. 359, 363, 624 A.2d 920 (1993). "The [t]enant has the burden of proof on her special defense that no rent was due under General Statutes [§] 47a-4a because of various health and housing code violations violating § 47a-7 (a). *Evergreen Corp.* v. *Brown*, 35 Conn. Sup. 549, 552, 396 A.2d 146 (1978)." (Internal quotation marks omitted.) *Landry* v. *Bacigaludo*, Superior Court, judicial district of Hartford, Housing Session, Docket No. HDSP-137826 (September 1, 2006) (*Bentivegna, J.*).

Section 47a-7 (a) provides that a landlord shall "[c]omply with the requirements of chapter 368o[4] and all applicable building and housing codes materially affecting health and safety of both the state or any political subdivision thereof . . . ." Although § 19a-87b-9, the regulation the defendant claims the plaintiff violated, may logically "affect the health and safety of the state," it is not as clear whether it is a "building or housing code" as contemplated by § 47a-7, nor is it clear that the defendant has established that the danger posed by the farm equipment "materially affects his safety . . . or has rendered the premises uninhabitable." (Internal quotation marks omitted.) *Housing Authority* v. *Olesen*, supra, 31 Conn. App. 363.

---

[4] Chapter 368o of the General Statutes governs tenement and lodging houses, and is not relevant to the present case.

Section 19a-87b-9 is contained within title 19A, "Public Health and Well-Being," of the regulations and is part of the subsection governing "Family Day Care Homes." It does not purport to be a building or housing code generally and would not apply to any landlord-tenant relationship not involving a family day care home. A review of the relevant case law indicates that the sorts of code violations § 47a-7 is concerned with relate specifically to the habitability of the property for the occupants and directly implicate the landlord-tenant relationship. See, e.g., *Eamiello* v. *Liberty Mobile Home Sales, Inc.*, 208 Conn. 620, 650–51, 546 A.2d 805 (1988) (depriving tenants of running water rendered premises uninhabitable), appeal dismissed, 489 U.S. 1002, 109 S. Ct. 1104, 103 L. Ed. 2d 169 (1989); *Housing Authority* v. *Olesen*, supra, 31 Conn. App. 362–63 (presence of lead paint per se violation of § 47a-7); *Tucker* v. *Lopez*, 38 Conn. Sup. 67, 457 A.2d 666 (1982) (failure to install smoke detectors in violation of fire code a material hazard); *Steinegger* v. *Rosario*, 35 Conn. Sup. 151, 156–57, 402 A.2d 1 (1979) (defective window and door conditions and rodent and roach infestation in violation of housing code rendered premises "uninhabitable"). The defendant's status as a day care provider is distinct and separable from her status as a tenant, and she provides no authority to support the proposition that § 19a-87b-9 somehow implicates the landlord-tenant relationship.

Thus, the fact that the defendant was cited for noncompliance with § 19a-87b-9, in and of itself, is insufficient to establish a "material risk or hazard" to the defendant or that the premises were "uninhabitable." That the condition existed for several years prior to the formal citation without complaint by the defendant reinforces the conclusion that it was not a material hazard. The rental agreement does not contain any provisions regarding the defendant's business, and no direct evidence of the hazardous nature of the farm

equipment to the occupants of the premises was submitted. The defendant has, therefore, failed to meet her burden of proving a "material hazard" or that the premises were uninhabitable, as would be required to sustain a defense under § 47a-4a.

## C

### Equitable Doctrine of Nonforfeiture

Although the defendant was not, as a matter of law, entitled to withhold rental payments, she may still seek sanctuary in equity as a defense to the summary process action. The defendant did not specifically raise any equitable defenses; however, "[i]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party . . . [a]lthough . . . the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Citation omitted; internal quotation marks omitted.) *New Haven* v. *Bonner*, 272 Conn. 489, 497–98, 863 A.2d 680 (2005). Construing the defendant's allegations and arguments in their most favorable light, this court interprets her claim that she reasonably believed she had a right to withhold rental payments, and that she relied on the plaintiff's inaction after she initially withheld payment as an indication of his acceptance of this practice, as invoking the equitable doctrine of nonforfeiture.

"That a court of equity, even in the absence of special circumstances of fraud, accident or mistake, may relieve against a forfeiture incurred by the breach of a covenant to pay rent, on the payment or tender of all arrears of rent and interest by a defaulting lessee, is elementary." (Internal quotation marks omitted.) *Thompson* v. *Coe*, 96 Conn. 644, 655, 115 A. 219 (1921). "The rule regarding equitable relief from the forfeiture

of a lease is that in cases of wilful or gross negligence in failing to fulfil[l] a condition precedent of a lease, equity will never relieve. But in case of mere neglect in fulfilling a condition precedent of a lease, which does not fall within accident or mistake, equity will relieve when the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease." (Internal quotation marks omitted.) *Elliott* v. *South Isle Food Corp.*, 6 Conn. App. 373, 377, 506 A.2d 147 (1986), quoting *Seven Fifty Main Street Associates Ltd. Partnership* v. *Spector*, 5 Conn. App. 170, 174, 497 A.2d 96, cert. dismissed, 197 Conn. 815, 499 A.2d 804 (1985). "A court may enjoin a forfeiture of a lease based on technical grounds to relieve a party against forfeitures and penalties not occasioned by his wilful neglect, upon the principle that one having a legal right shall not be permitted to avail himself of it for the purpose of injustice or oppression." (Internal quotation marks omitted.) *Nicoli* v. *Frouge Corp.*, 171 Conn. 245, 247, 368 A.2d 74 (1976).

Perhaps the most clear-cut case in which our Supreme Court has applied the doctrine of nonforfeiture is *Fellows* v. *Martin*, 217 Conn. 57, 584 A.2d 458 (1991), in which the plaintiff sought to evict the defendant for failure to pay a disputed $25 of an approximately $500 monthly rent. The court, recognizing the grave disproportionality between the plaintiff's loss of $25, on the one hand, and the defendant's forfeiture of both a $9900 deposit and the security of a ninety-nine year lease on the other, reversed the trial court's finding in favor of the plaintiff, holding that "[t]he doctrine against forfeitures applies to a failure to pay rent in full when that failure is accompanied by a good faith intent to comply with the lease or a good faith dispute over the meaning of a lease." Id., 69.

Subsequent decisions have applied the doctrine against forfeitures when "(1) the tenant's breach was not willful or grossly negligent; (2) upon eviction the tenant will suffer a loss wholly disproportionate to the injury to the landlord; and (3) the landlord's injury is reparable." *Cumberland Farms, Inc.* v. *Dairy Mart, Inc.*, 225 Conn. 771, 778–79, 627 A.2d 386 (1993). Many courts have also taken into consideration the tenant's actions after receiving notice by the landlord of the termination of the lease, looking favorably on any actions by the tenant to cure the default or evidencing an intent to prevent the forfeiture. See, e.g., *Housing Authority* v. *Parker*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. SPH 9111-63027 (August 7, 1992) (*Holzberg, J.*) (7 C.S.C.R. 1185) ("the fourth factor identified by the courts is the extent to which the tenant has demonstrated good faith in curing the default"); *Housing Authority* v. *Whitaker*, Superior Court, judicial district of Stamford-Norwalk, Housing Session, Docket No. SPNO 9410 16560 (September 7, 1995) (*Tierney, J.*);[5] *Thompson* v. *Coe*, supra, 96 Conn. 657 ("[t]he conduct of the [tenant] after he was informed of the nonpayment . . . is conclusive of the good faith of the [tenant] and his continuous desire to avoid a forfeiture").

In the present case, the first and third factors outlined in *Cumberland Farms, Inc.*, weigh in favor of the defendant. Given the unusual posture of the rental agreement within a separation agreement, she understandably, even if incorrectly, believed that she had a right to withhold rental payments on the basis of the alleged failures of the plaintiff to fulfill his obligations under the same separation agreement. She did so in good faith and had done so several times without objection by

[5] *Housing Authority* v. *Whitaker*, supra, Superior Court, Docket No. SPNO 9410 16560, provides a useful compendium of nine somewhat overlapping equitable factors courts have applied in nonpayment summary process cases.

the plaintiff. Compare *Syncro Flame Burner Corp.* v. *Windham Development Co.*, 11 Conn. Sup. 28 (1942), in which the court applied the doctrine against forfeitures when the plaintiff "in good faith believed that the February rent had been fully paid by a credit to an account it considered owed to it by the defendant. This method of crediting rent against an account due had been used on a previous occasion with no objection on the part of the defendant."[6] Id., 30. Moreover, the plaintiff's injury is purely financial and can be easily remedied through the payment of damages.[7] Finally, the defendant, upon being served with the summary process complaint, offered to pay the full amount of damages in an effort to cure her default and testified that she would not withhold rental payments in the future to prevent the forfeiture.

The second factor set forth in *Cumberland Farms, Inc.*, however, disproportionality between the losses of the landlord and tenant, is less propitious for the defendant. She will not forfeit any substantial deposit as a result of an eviction, nor will she forfeit an option to renew or purchase as in *Syncro Flame Burner Corp.* v. *Windham Development Co.*, supra, 11 Conn. Sup. 28. Nevertheless, the lease term was significantly greater

[6] This distinguishes the present case from a situation such as that in *Elliott* v. *South Isle Food Corp.*, supra, 6 Conn. App. 373, in which the tenants failed to remove mechanic's liens they had caused to be attached to the property. The Appellate Court, refusing to apply the doctrine against forfeitures, found that the trial court reasonably concluded that the tenants breached the conditions of the lease "willfully" or with "gross negligence."

[7] Of course, there is also arguably an additional element of injury in that the plaintiff can no longer rely on the defendant to not engage in self-help measures, thereby creating potential for future disputes and more wasted resources in legal proceedings. On the basis of the defendant's testimony at the hearing, however, and her offer to pay the full amount of rent claimed due well before trial, this court is confident that she understands her obligations and will adhere to them in the future, seeking redress, if she chooses, for the plaintiff's allegedly unlawful actions in the proper venue.

than a typical one year residential lease, extending from July, 2008, through July, 2013. Additionally, she has established a locus for her business on the property, which is her sole source of income. She has made several investments, albeit not large, in obtaining her day care license and remedying citations issued by the department of public health to maintain her status as a home day care provider. Taken together, this presents the defendant with a potentially severe loss if the plaintiff were to reclaim possession, divesting her both of her home and her sole source of income.[8] Cf. id., 31 (in applying doctrine against forfeitures, court considered fact that lessee had established business on property, and installed machinery, equipment and valuable goods thereon). In contrast, the plaintiff has only suffered damages of $654.24, which the defendant has previously offered to pay.[9] On balance, the defendant faces a substantially greater loss from forfeiture than the plaintiff faces if denied possession.

Therefore, this court concludes that the plaintiff is not entitled to possession and that the parties' rental agreement is found to have not been terminated.

---

[8] The court recognizes that the defendant's characterization of her day care income as her "sole source" of income ignores the fact that she does receive alimony payments from the plaintiff. This does not, however, affect the court's analysis.

[9] Thus, the present case is also unlike one in which the defendant is simply unable to meet her financial obligations under the lease. E.g., *Zitomer* v. *Palmer*, 38 Conn. Sup. 341, 446 A.2d 1084 (1982). The defendant here has continued to pay rent in full and on time after being served with the notice to quit and has indicated her intention to do so regardless of claims she may have against the plaintiff in the future. There is no indication that she will be unable or unwilling to meet this obligation, and the plaintiff will not be forced to "repeatedly [forgo] what [are] clearly his rights under the lease . . . ." Id., 346.