[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs commenced this action in 1998. By Revised Complaint dated January 12, 1998 [sic] should be 1999) the plaintiffs allege against the defendant's claims of intentional misrepresentation (First and Second Counts) and breach of a contract (Third Count). Significantly, the plaintiffs also assert a cause of action in negligence (Fourth Count) against Stright Sewerage Disposal Company, Inc. ("Stright"), who the plaintiffs hired to conduct an independent inspection of the septic system on their behalf. In their Answer dated April 28, 1999, the defendants denied the allegations of the Revised Complaint and raised two (2) Special Defenses: (1) accord and satisfaction, and (2) comparative negligence by the defendants. The matter was tried on January 17, 2001, at which time the plaintiffs withdrew their action against Stright.
The evidence at trial established the following facts: The defendant listed the Property for sale in February 1997. At the time the defendants prepared, with the assistance of their Real Estate Broker, a Residential Property Condition Disclosure Report (the "Property Report"). As part of the Report, the defendant disclosed that (1) the Property had a septic system, (2) it was serviced by the firm Kaiser-Bathstone, ("Kaiser"), and (3) it was unknown if there were any defects in the septic system.
In or about June or July of 1997, the plaintiffs became interested in purchasing the Property. At that time they were given a copy of the Property Report. Thereafter, they hired Stone Hollow Inspectors to inspect the property. Stone Hollow issued a comprehensive report which indicated that the septic fields were wet, that the system was functioning and that there were no repairs recommended. The plaintiffs also hired Stright to conduct an independent inspection specifically of the septic system and found that the system was operating in "working order." Robert Aillery, President of Stright, testified at trial that the system could continue to function normally without such recommended improvements provided that it was cleaned regularly. The plaintiffs themselves went to the Property five to six times between July 1997 and November 1997, often accompanied by many of their relatives, and on none of those occasions did they find excessive dampness or detected any unusual smells.
In August 1997, the parties entered into a sales contract with respect CT Page 5094 to the sale and purchase of the Property. The plaintiffs reviewed the Contract with their attorney and, in fact, requested that certain specific terms be added to the Contract, including provisions requiring the defendants to perform certain repairs, give monetary credits totaling $8,250 and install a riser on the septic tank Defendants performed the installation of the riser requested by the plaintiffs in September 1997. At the time of the installation, plaintiffs issued no report indicating any problems with the operation of the septic system.
The contract contained three (3) significant clauses: (1) that the plaintiffs understood that they were purchasing the property in an "as is" condition; (2) that the plaintiffs did not rely on any representations made by the defendants in the purchase of the Property; and (3) that the acceptance of the deed at closing constituted full compliance by the Seller of all of the Contract terms.
The closing took place on November 9, 1997 and the plaintiffs accepted the deed from the defendant. The evidence at trial showed that the defendants never made any representations to the plaintiffs concerning the septic system, either before or after the closing, other than those representations set forth in the Property Report and the Contract.
In or about March or April of 1998, the plaintiffs asked Kaiser to inspect the septic system. In November 1999, two years after the closing, plaintiffs had Lauterback, Inc. install a new septic system with a larger septic tank (1,500 gallons). During the period of time between November 1997 and November 1999, the plaintiffs used the septic system and did not experience any disruptions with the system.
In the First Count of their Revised Complaint, the plaintiffs allege that the defendants "intentionally misrepresented" to them the condition of the septic system. A cause of action for intentional misrepresentation is essentially a cause of action in fraud. Rego v. Connecticut Ins.Placement Facility, 22 Conn. App. 428, 430 (1990); Marron and SipeBuilding and Contracting Corp. v. Flor, 22 Conn. App. 689, 7088 (1990). It is well-settled that such a claim must be proven by clear and convincing evidence. Rego, supra at 429-30 (and cases cited therein).
The plaintiffs have failed to prove their claims of misrepresentation by any standard of evidence. At trial, there was no evidence of any intentionally false statement or fraudulent nondisclosure by the defendants concerning the septic system. There was no evidence of any misrepresentation at all by the defendants, intentional, negligent or otherwise. The defendants indicated in the Property Report provided to the plaintiffs that it was unknown if there were any defects in the septic system. Defendants were never informed by any party servicing the CT Page 5095 septic system that the system was failing, defective, or in need of replacement. The plaintiff serviced the septic system regularly for the defendants and its sole recommendation was that the system be cleaned on an annual or biennial basis, a recommendation the defendants followed. The Keisers' own independent inspector, Stright found the septic system to be in "working order" prior to the closing.
The independent inspection by Stright on the plaintiffs behalf shows that the septic system was functional and in "working order"prior to the plaintiffs taking title of the Property. The Keisers did not detect any problem with the septic system for several months after taking possession of the Property, and did not replace the system until two (2) years after closing. The plaintiffs replaced the prior septic system by having a larger septic tank installed. The weight of the evidence is that any failings of the septic system were related to the plaintiffs' use and possession of the system, not some prior defect existing during the defendant's ownership of the Property.
It is a long-standing principle of Connecticut law that an essential element of a cause of action for intentional or negligent misrepresentation is that the defendant makes a statement of material fact upon which the plaintiff reasonably relied. Williams Ford, Inc. v.Hartford Courant Co., 232 Conn. 559, 575 (1995); Dorsey v. Manacuso,23 Conn. App. 629, 633 (1990). "[T]o state a claim of negligent misrepresentation the plaintiff must allege and prove that reliance on the misstatement was justified or reasonably." Williams Ford, Inc.,
supra, at 579-80.
Assuming that the plaintiffs relied on some general, unspecified nondisclosure of facts by the defendants, it is clear under the facts of this case that any alleged reliance by the plaintiffs on statements concerning the septic system was unjustified. First the plaintiffs expressly disclaimed their reliance on any such statements. The Contract between the defendants and the plaintiffs expressly provided that the plaintiffs did not rely on any representations made by the defendants in the purchase of the Property.[1] The plaintiffs agreed to this clause after reviewing the Property Report that indicated that it was "unknown" whether there were any defects concerning the septic system and after Stright performed its independent inspection of the system on their behalf.
The evidence showed that the plaintiffs had knowledge that there was a potential issue with respect to the septic system. The defendant clearly indicated on the Property Report that it was unknown whether the septic system had any defects or failings. The plaintiffs had their own inspection of the system done. For these reasons, they had specific CT Page 5096 provisions included in the Contract concerning the septic system, including the installation of a concrete riser and cover over the septic tank clean-out. With such knowledge, the plaintiffs agreed to disclaim reliance on any representations by the defendants. The plaintiffs are simply not permitted to disregard their contractual obligations.
There is no proof that the defendants made any representations that were knowingly false or made "recklessly" with no regard for the truth.Compare Warman v. Delaney, 148 Conn. 469-473 (1961). In the absence of such evidence, Connecticut law is clear that the plaintiffs cannot simply disregard the bargained-for terms of the sales contract. "[W]here a party realizes he has only limited information upon the subject of a contract, but treats that knowledge as sufficient in making the contract he is deemed to have assumed the risk of a mistake." Holly Hill Holdings v.Lowman, 226 Conn. 748, 757 (1993); See also 1 Restatement (Second), Contracts § 154 (1981).
Strights independent inspection of the septic system was virtually the last act concerning the system before the closing. There was no evidence at trial, that the defendants made any representations concerning the septic system after Stright's inspection that could have conceivably vitiated the Keisers' reliance on that inspection.
Judgment shall enter in favor of the defendants on the plaintiffs' misrepresentation claims set forth in the First and Second Count of the Revised Complaint.
As the basis for their breach of contract claim, the plaintiff's claim that the defendants breached the following two provisions of the Contract Rider:
Pursuant to paragraph 3, the sole obligation of the defendants was to reveal "latent defects" of which they were "aware," and not to "knowingly" withhold information relating to "material or otherwise during the ownership of the defendants. The evidence is that plaintiffs regularly serviced the system and always found it in working order and functional as long as it was cleaned periodically. This assessment was confirmed by the plaintiffs' own independent inspection shortly before the closing. To the extent that they alleged "defect" manifested, it did so at least several months after the plaintiffs took possession of the Property.
Paragraph 3 required that the defendants reveal only those defects of which they were "aware" or "knowingly" had information about. Similarly, paragraph 24 of the Contract Rider only required that the representations therein be made "to the best of the Seller's knowledge and belief. The CT Page 5097 defendants could only breach the Contract if they failed to disclose information of which they had actual knowledge. The conflicting evidence at trial simply does not permit a finding that the defendants in fact knew that the septic system was defective, particularly in view of Stone Hollow, plaintiff's and Stright's respective reports and the fact that there were no alleged problems with the system until the plaintiffs had owned the Property for at least several months. Judgment enters in favor of the defendants on the Third Count of the Revised Complaint.
In their First special Defense, the defendants assert that by acceptance of the Warranty Deed in this matter, there was an accord and satisfaction of any and all claims which the plaintiffs may have had against the defendants.
In this case, "[t]he Buyer agrees that the provisions of this paragraph shall not survive the delivery of the deed." The parties' agreement was not excepted from the merger doctrine and the trial court was justified in relying on the merger for the failure of the breach of warranty count.
The express terms of the Contract mandate the conclusion that the Contract was deemed fully complied with at the time the plaintiffs accepted the deed at the closing. As such, the plaintiffs cannot now claim that the defendants breached the Contract or made any misrepresentations related to its subject matter.
In their Second Special Defense, the defendants assert that to the extent, if any, that the plaintiff's claim negligence in this matter, any damages suffered by the plaintiffs were as a result of their own negligence, which negligence exceeded any negligence that may be attributed to the defendants.
Any alleged failings of the septic system causing the plaintiffs' alleged damages must be viewed in light of the following evidence at trial: (1) plaintiffs regularly serviced the system during the defendant's ownership and always found it in working order and functional as long as it was cleaned periodically; (2) Stright's independent inspection on behalf of the plaintiffs shortly before the closing confirmed the assessment that the system was in "working order"; (3) the plaintiffs did not detect any problem with the septic system for several months after taking possession of the Property, and did not replace the system until two years after closing; and (4) the plaintiffs replaced the prior septic system by having a much larger septic tank installed. The conclusion is that any failings of the septic system were related to the plaintiff's own use of the system, not some prior defect existing during the defendant's ownership of the Property. CT Page 5098
For the foregoing reasons, judgment enters in favor of the defendants on all counts of the plaintiffs' Revised Complaint.
WILLIAM F. HICKEY JUDGE TRIAL REFEREE